### GRATZ et·al. v. CLAUGHTON.

No. 147, Docket 21660.

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1951.

Decided Feb. 6, 1951.

Writ of Certiorari Denied April 30, 1951.
See 71 S.Ct. 741.

Higgins, Brenner & Higgins, New York City, Joseph T. Higgins, Philip A. Brenner, New York City, J. Richard Kafes, Trenton, N. J., Julius Kuschner, New York City, of counsel, for defendant-appellant, Edward N. Claughton.

Milton Pollack, New York City, Milton Pollack, Irving K. Rubin and Richard F. Wolfson, all of New York City, of counsel, for appellee, Stella Gratz.

White & Case, New York City, Orison S. Marden, David Hartfield, Jr. and Melvin L. Milligan II, all of New York City, of counsel, for plaintiff-appellee, Missouri-Kansas-Texas R. Co.

Newell A. Clapp, Acting Asst. Atty. Gen., Irving H. Saypol, U. S. Atty. for Southern District of New York, New York City, Edward H. Hickey, Attorney, Department of Justice, Donald B. MacGuineas, Attorney, Department of Justice, Washington, D. C., for the United States, intervenor-appellee.

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

. L. HAND, Chief Judge.

This is an appeal by the defendant, Claughton, from a judgment against him, entered upon the report of a master, in an action by a shareholder of the Missouri-Kansas-Texas Railroad Company under § 16(b) of the Securities Exchange Act of 1934.[1] The railroad was originally named as a defendant and was later made a co-plaintiff; and the United States intervened under § 2403 of Title 28, U.S.C.A., because the defendant challenged the constitutionality of the statute. The court first granted a summary judgment as to all the issues except the amount of the profits made by the defendant, which it referred to a master, on whose report it entered final judgment. The defendant does not dispute the propriety of a summary disposition of all the issues except that referred, but he does dispute the propriety of the judgment in law. First, he argues that the venue was wrong because he was domiciled in Florida, and the summons was served upon him in that state. Second, he disputes the rule adopted by the master in computing his profits. Third, he challenges the constitutionality of the statute which imposes the liability, and of the provisions for venue. We shall take up the first and third in sequence, reserving the second for the last.

■ The argument as to venue is as follows. Section 27 of the Act[2] provides that "Any suit or action to enforce any liability or duty created by this chapter * * * may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business" ; and the phrase, "such district," refers back to the preceding sentence: "Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." The defendant says that § 16(b) does not declare that an officer, a director or a "beneficial owner" (one, who, like Claughton, holds ten per cent of the company's shares), "violates" the statute by dealing in its shares. He of course agrees that such a person must account to the company for any profits, but he says that the statute nowhere forbids such dealing, but merely makes the dealer *pro tanto* an agent, or constructive trustee, of the corporation. From this it follows, he

---

1. § 78p (b) Title 15, U.S.C.A.

2. § 78aa of Title 15, U.S.C.A.

says, that the provision that a civil suit may be brought in "such district"—that is, in a district where a criminal prosecution will lie—is confined to civil actions upon a duty, whose breach is also a crime. He concludes that since dealing in shares was not made a crime, an action to recover profits must be brought on "in the district" wherein the defendant is found, or is an inhabitant or transacts business. There is no warrant for such a distribution of the three places of venue between civil suits and criminal prosecutions. Section 16(b) was passed "For the purpose of preventing the unfair use of information which may have been obtained * * * by reason of his"—the "beneficial owner's"—"relationship to the issuer". The section does indeed cover trading by those who in fact have no such information, but that is true as well of dealings between a trustee and his beneficiary: "A trustee with power to sell trust property is under a duty not to sell to himself either at private sale or at auction, whether the property has a market price or not, and whether the trustee makes a profit thereby." Restatement of Trusts, § 170(1): Comment b. All such transactions are breaches of trust, and § 16(b) in effect made "beneficial owners" fiduciaries as directors and officers were anyway. To suppose that the dealings themselves were not forbidden, but were sanctioned on condition that the "beneficial owner" accounted for the profits, would as much falsify the purpose of the statute as it would the purpose of the equitable doctrine from which the statute was borrowed. The section forfeits the profits because it forbids dealings in the shares. Nobody is obliged to become a director, an officer, or a "beneficial owner" ; just as nobody is obliged to become the trustee of a private trust; but, as soon as he does so, he accepts whatever are the limitations, obligations and conditions attached to the position, and any default in fulfilling them is as much a "violation" of law as though it were attended by the sanction of imprisonment. The defendant's argument that no "act or transaction constituting the violation occurred" in the Southern District, need not detain us. It rests upon the assumption that the wrong consists in failing to turn over the profits to the corporation. In fact it is obtaining the profits by the wrongful purchase and sale, or sale and purchase, of shares; and those acts took place on the floors of the New York Exchanges where by his orders the transactions took place.[3]

The challenge to the constitutionality of § 16(b) we have answered twice before.[4] For many years a grave omission in our corporation law had been its indifference to dealings of directors or other corporate officers in the shares of their companies. When they bought shares, they came literally within the conventional prohibitions of the law of trusts; yet the decisions were strangely slack in so deciding. When they sold shares, it could indeed be argued that they were not dealing with a beneficiary, but with one whom his purchase made a beneficiary. That should not, however, have obscured the fact that the director or officer assumed a fiduciary relation to the buyer by the very sale; for it would be a sorry distinction to allow him to use the advantage of his position to induce the buyer into the position of a beneficiary, although he was forbidden to do so, once the buyer had become one. Certainly this is true, when the buyer knows he is buying of a director or officer, for he expects to become the seller's *cestui que* trust. If the buyer does not know, he is entitled to assume that if his seller in fact is already a director or officer, he will remain so after the sale. Nor was it necessary to confine this disability to directors or other officers of the corporation. The reason for the doctrine was that a director or officer may have information not accessible to a shareholder, actual or prospective, and that advantage is not confined to them. We take judicial notice that an effective control over

---

3. Scheer v. Rockne Motors Corp., 2 Cir., 68 F.2d 942; Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 133 A.L.R. 255; Restatement of Conflict of Laws, § 67.

4. Smolowe v. Delendo Corp., 2 Cir., 136 F. 2d 231, 148 A.L.R. 300; Park & Tilford, Inc. v. Schulte, 2 Cir., 160 F.2d 984.

the affairs of a corporation often does not require anything approaching a majority of the shares; and this is particularly true in the case of those corporations whose shares are dealt in upon national exchanges. Nor is it common for the control so obtained to be in the hands of one individual; more often a number share it, who are all in a position to gain a more intimate acquaintance with the enterprise and its prospects than the shareholders at large. It is of course true that the ownership of ten per cent of the shares does not always put the owner among those who do control; but neither Congress, nor any other legislature, is obliged to limit the means which it chooses so exactly to its ends that the correspondence is exact. If only those persons were liable, who could be proved to have a bargaining advantage, the execution of the statute would be so encumbered as to defeat its whole purpose. We do not mean that the interest, of which a statute deprives an individual, may never be so vital that he must not be given a trial of his personal guilt; but that is not so when all that is at stake is a director's, officer's or "beneficial owner's" privilege to add to, or subtract from, his holdings for a period of six months. In such situations it is well settled that a statute may provide any means which can reasonably be thought necessary to deal with the evil, even though they may cover instances where it is not present.[5] The challenge to the validity of the venue provision—§ 27—depends upon the supposed unfairness of compelling the defendant to defend an action brought far from his residence, Florida, upon transactions which took place in New York. It is an answer that a man may be prosecuted even for a crime—to say nothing of a civil wrong—in any district where he has brought to pass the proscribed event, however far that may be from his home. The most extreme instance of this is conspiracy,[6] but the doctrine is of general application,[7] indeed the Constitution itself, III, § 2; and the Sixth Amendment provides that the prosecution shall be where the crime is "committed." As we have already said, this wrong was "committed" where the sales and purchases were made.

█ There remains the question of the computation of profits, which we dealt with in Smolowe v. Delendo Corporation, supra,[8] Section 16(b) declares that "any profit realized * * * from any purchase and sale, or any sale and purchase * * * within any period of less than six months * * * shall inure to and be recoverable by the issuer": the corporation. It is plain that this presupposes some matching of (1) purchases against sales, or of (2) sales against purchases, and that there must therefore be some principle upon which both the minuend—the sale price—and the subtrahend—the purchase price—can be determined. At first blush it might seem that the statute limited the recovery to profits derived from transactions in the same shares; as, for example, that a dealer's profit upon the sale of any given number of shares was to be measured by subtracting what he paid for those shares from what he got upon a sale of the same certificate. However, as we observed in Smolowe v. Delendo Corporation, supra,[8] that would allow an easy avoidance of the statute; in order to speculate freely an officer, director, or "beneficial owner" need only hold a substantial block of shares for more than six months. If, for example, on January 1st, he had 10,000 shares which he had bought before October 1st, he could buy 1,000 shares on February 1st and sell 1,000 shares at a profit on April 1st, making

---

5. Bain Peanut Co. of Texas v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 75 L.Ed. 482; South Carolina Highway Department v. Barnwell Brothers, 303 U.S. 177, 192, 193, 58 S.Ct. 510, 82 L.Ed. 734; United States v. Carolene Products Co., 304 U.S. 144, 153, 154, 58 S.Ct. 778, 82 L.Ed. 1234; North American Company v. Securities & Exchange Commission, 327 U.S. 686, 710, 711, 66 S.Ct. 785, 90 L.Ed. 945.

6. Hyde v. United States, 225 U.S. 347, 365, 32 S.Ct. 793, 56 L.Ed. 1114; Easterday v. McCarthy, 2 Cir., 256 F. 651; Burton v. Smithers, 4 Cir., 31 F.2d 966; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 966.

7. In re Palliser, 136 U.S. 257, 266, 267, 10 S.Ct. 1034, 34 L.Ed. 514.

8. 2 Cir., 136 F.2d 231, 148 A.L.R. 300.

delivery out of certificates from the 10,000 shares purchased before October 1st. After the two transactions his position would be what it had been on January 1st save that in two months he had made a profitable turn in 1,000 shares—exactly the evil against which the statute is directed. Moreover, there is an added reason for this interpretation, if one be needed. In the case of a sale followed by a purchase it is impossible to identify any purchase with any previous sale; one would have to confine such transactions to the practically non-existent occasions when the proceeds of the sale were used to purchase. Thus it appears, regardless of anything said during the passage of the bill through Congress and of the different forms it took, that the Act does not demand—that the same shares should be sold which were bought. This accords with the fungible nature of shares of stock. Indeed, if we translate the transaction into sales and purchases, or purchases and sales, of gallons of oil in a single tank, or of bushels of wheat in a single bin, it at once appears that the ascertainment of the particular shares bought or sold must be wholly irrelevant.

■ Although for these reasons it appears that the transactions—sales and purchases, or purchases and sales—are not to be matched by identifying the shares dealt in, we are no nearer than before to finding an answer as to how transactions shall be matched; all that so far appeared, is that the matching is to be between contracts of sale and contracts of purchase, or vice versa. On the other hand it is manifest that the intent of the fiduciary cannot be the test; first, because he generally has no ascertainable intent; and second, because that would open the door even more widely to the evil in question. The statute does not allow the fiduciary to minimize his profits, any more than to set off his losses against them. We can therefore find no principle by which to select any two transactions which are to be matched; and, so

far as we can see, we are forced to one of two alternatives: to match any given sale taken as minuend, against any given purchase, taken as subtrahend, in such a way as to reduce profits to their lowest possible amount, or in such a way as to increase them to the greatest possible amount. The master adopted the second course, following what he supposed to be the doctrine of Smolowe v. Delendo Corporation, supra.[8] We think that he was right for the following reasons.

■ The question is in substance the same as when a trustee's account is to be surcharged, for, as we have said, the statute makes the fiduciary a constructive trustee for any profits he may make. It is true that on the beneficiary in an accounting rests the burden of proof of a surcharge,[9] although the fiduciary has the burden of establishing any credits.[10] Since the plaintiff was seeking to surcharge the defendant we will therefore assume that it rested upon her to show how the transactions are to be matched; and, that, if there were nothing more, since she cannot do so, she must be content to have them matched in the way that shows the least profit. Obviously that cannot be the right answer, for the reasons we have given; and perhaps the fact that it cannot be, is reason enough for adopting the alternative. But there is another ground for reaching the same result. As we have said, the statute makes all such dealings unlawful, and makes the fiduciary accountable to the corporation. Although it is impossible in the case at bar to compute the defendant's profits, except that they must fall between two limits—the minimum and the maximum—the cause of this uncertainty is the number of transactions within six months: that is, the number of defendant's derelictions. The situation falls within the doctrine which has been law since the days of the "Chimney Sweeper's Jewel Case,"[11] that when damages are at some unascertainable amount below an upper limit and when the uncer-

8. 2 Cir., 136 F.2d 231, 148 A.L.R. 300.

9. Ewen v. Peoria & Eastern Ry., D.C., 78 F.Supp. 312, 334.

10. Wootton Land and Fuel Co. v. Ownbey, 8 Cir., 265 F. 91.

11. Armory v. Delamirie, 1722, 1 Strange 505.

tainty arises from the defendant's wrong, the upper limit will be taken as the proper amount.[12]

This results in looking for six months both before and after any sale, and not for three months only, as the defendant insists. If one is seeking an equation of purchase and sale, one may take any sale as the minuend and look back for six months for a purchase at less price to match against it. On the other hand, if one is looking for an equation of sale and purchase, one may take the same sale and look forward for six months for any purchase at a lower price. Although obviously no transaction can figure in more than one equation, with that exception we can see no escape from what we have just said. It is true that this means that no director, officer, or "beneficial owner" may safely buy and sell, or sell and buy, shares of stock in the company except at intervals of six months. Whether that is too drastic a means of meeting the evil, we have not to decide; it is enough that we can find no other way to administer the statute. Therefore, not only will we follow Smolowe v. Delendo Corporation, supra,[8] as a precedent; but as *res integra* and after independent analysis we reassert its doctrine. The defendant concedes that, except for carrying the transactions backward and forward for six months, instead of for three, the master followed the rule laid down in that decision; and the plaintiff has not appealed, so that she is not entitled to any more than she has recovered. On this account we have not examined the master's computations in detail and are not to be understood to have passed upon them. The crushing liabilities which § 16(b) may impose are apparent from this action in which the judgment was for over $300,000; it should certainly serve as a warning, and may prove a deterrent.

Judgment affirmed.

---

8. 2 Cir., 136 F.2d 231, 148 A.L.R. 300.

12. Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684; Schnell v. The Vallescura, 293 U.S. 296, 307, 55 S.Ct. 194, 79 L.Ed. 373; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563–565, 51 S.Ct. 248, 75 L.Ed. 544; Bigelow v. R.

K. O. Radio Pictures, Inc., 327 U.S. 251, 264, 265, 66 S.Ct. 574, 90 L.Ed. 652; Great Southern Gas & Oil Co. v. Logan Natural Gas & Fuel Co., 6 Cir., 155 F. 114; Package Closure Corp. v. Seal-Right Co., Inc., 2 Cir., 141 F.2d 972, 979; President & Directors of Manhattan Co. v. Kelby, 2 Cir., 147 F.2d 465, 476.