Suzanne L. ADLER, on behalf of herself and all of the stockholders of Williams-McWilliams Industries, Inc., similarly situated, Plaintiff-Appellee,

v.

W. Edward KLAWANS, Defendant-Appellant,

and

Williams-McWilliams Industries, Inc., Defendant.

No. 119, Docket 25241.

United States Court of Appeals Second Circuit.

Argued Jan. 15 and 16, 1959.

Decided May 4, 1959.

As Modified June 17, 1959.

**842**

John L. Freeman, New York City (Wolf, Haldenstein, Adler & Freeman,

New York City, on the brief), for defendant-appellant, W. Edward Klawans.

Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, for defendant-appellant Williams-McWilliams Industries, Inc.

Stanley L. Kaufman, New York City (Kaufman, Taylor & Kimmel, New York City, on the brief), for plaintiff-appellee, Shephard S. Miller, New York City, of counsel.

Before MEDINA, LUMBARD and BURGER [*], Circuit Judges.

BURGER, Circuit Judge.

This appeal presents for the first time the question whether Section 16(b) of the Securities Exchange Act of 1934 [1] covers so called "insider profits" made on sales of the corporation's stock by the director of a corporation while holding such office but who was not a director when he purchased the stock less than six months earlier. We hold that such profits are covered by the statute.

Appellant also raises a subsidiary question, whether, if accountable for such profits, the director may offset losses in transactions in the same stock within the six month period covered by the statute. We hold that such losses may not be offset against profits. Smolowe v. Delendo Corp., 2 Cir., 136 F.2d 231, 148 A.L.R. 300, certiorari denied, 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

The statute controlling these issues provides in pertinent part:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, un-

[*] Sitting by designation pursuant to 28 U.S. C.A. § 291(a).

[1]. 48 Stat. 897 (1934), 15 U.S.C.A. § 78p (b).

less such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

Appellee Adler, a stockholder of Williams-McWilliams Industries, Inc., sued in the corporation's behalf under Section 16(b) to recover profits realized by appellant Klawans when the latter sold shares of the corporation which he had purchased before but sold after he became a director. Appellant moved for summary judgment asserting Section 16 (b) did not apply because he, Klawans, was not a director when he purchased the shares. Appellee by cross motion sought summary judgment urging that accountability for profits in these circumstances depends only on his being a director at the time of sale when the profit is realized. Judge Sylvester J. Ryan granted this cross motion fixing the profit realized at $20,748.36 unre-

duced by losses sustained by Klawans on sales of certain of the shares.

The pertinent facts are not in dispute. Appellant through another purchased 9900 shares of stock of Williams-McWilliams Industries, Inc., at various times between October 1, 1956 and January 17, 1957. This stock is listed and traded on the American Stock Exchange. Appellant's holdings amounted to less than 10% of the corporation's stock and he was neither a director nor officer between October 1, 1956 and January 17, 1957. He became a director on March 18, 1957 or about 60 days after the last purchase of the corporation's stock. He made no purchases of this stock after becoming a director. In five separate transactions within 10 days after his election as a director he sold 7900 shares at a profit. Thereafter he made other sales of the stock at a loss (between March and May 3, 1957), divesting himself of all the stock of the corporation purchased after October 1, 1956. However he remained a director of the company. From the outset of his term as director, commencing with the first meeting he attended—on the day he was elected—he was active in pressing for the payment of dividends both in cash and in stock.

### I—Applicability of Statutes.

On the principal issue presented by this appeal appellant contends that, to give meaning to Section 16(b) in its entirety, the relationship of director or officer must exist both at the time of the purchase *and* at the time of the sale. Emphasizing the conjunctive "and" of the statute he argues that by its terms the law limits itself to "profit realized by him from any purchase *and* sale, or sale *and* purchase * * *" (Emphasis added.) To support his argument he refers to the language of a dissenting opinion in a case in this court, Stella v. Graham-Paige Motors Corp., 2 Cir., 1956, 232 F.2d 299, 305 (see footnote 3, infra). He recognizes that the dissenting view on which he relies touched on an issue not reached by the majority of the court in that case, since it involved

a 10% beneficial owner rather than a director or officer.

Additionally appellant urges that Section 16(b) must be strictly construed because it is a penal statute; he also points to Rule X–16A–10 of the Securities and Exchange Commission and argues that since it exempts him from *reporting* the challenged sales it operates to take the transactions out of the reach of Section 16(b) by reason of the last sentence of the section which reads:

> "This subsection shall not be construed to ·cover * * * any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

█ The objectives sought to be accomplished by Congress in adopting Section ' 16(b) are clear from the language of the statute without reference to the legislative history. They supply the key to the resolution of whatever ambiguity can be argued from other portions of the statute. The pertinent language is:

> "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, * * * of any equity security of such issuer * * * within any period of less than six months * * * shall inure to * * * the issuer * * *"

This makes plain the intent of Congress to reach a "purchase and sale" or "sale and purchase" within a six month period by someone within one of the proscribed categories, i. e., one who was a director, officer or beneficial owner *at some time*. The conventional rules of construction applied to this latter portion of the statute alone are not sufficient to resolve the issue. Appellant presents an arguable interpretation of the statute which would limit its reach to transactions in which the person is a director or officer at both ends of the transaction. If Congress had made such profits the subject of a criminal penalty—as presumably it could—appellant's argument would carry much weight for we would be obliged to construe it strictly. For reasons which will be developed more fully hereafter we construe this statute to be remedial, not penal, and hence subject to that interpretation most consistent with the legislative purpose as that can be discerned from the statute itself and by resort to its history if that be needed.

█ At most our task is, in Judge Cardozo's words, that of filling "the open spaces in the law." [2] In addition to the intent and purpose of the legislation which we must glean from the statute as a whole rather than from isolated parts, we must consider the results which would flow from each of the two interpretations contended for. If we find one interpretation tends to carry out and the other to defeat the purposes of the statute, the resolution of the issue becomes simple.

█ The undoubted congressional intent in the enactment of § 16(b) was to discourage what was reasonably thought to be a widespread abuse of a fiduciary relationship—specifically to discourage if not prevent three classes of persons from making private and gainful use of information acquired by them by virtue of their official relationship to a corporation. The objective was not to punish but to deter the persons in these three categories—directors, officers, 10% beneficial owners—from making improper use of information gained in a representative capacity. The practices could not be prevented *in toto* but Congress sought to take the profit out of what it considered improper conduct. It is plainly a remedial step, as opinions of this court have indicated, even though in certain circumstances the remedy seems harsh. The statute channels the insider profits back into the corporation, not to an informant or person directly suffering a loss.

**2.** Cardozo, The Nature of the Judicial Process, in Selected Writings 154 (1947).

Unlike a criminal statute where intent would be an essential ingredient this statute renders the subject accountable for proscribed profits regardless of intent. Congress recognized, H.R.Rep. No. 1383, 73d Cong., 2d Sess. (1934), that § 16(b) would not correct all the practices thought to be evil; obviously the six month limitation alone "let many fish out of the net" since the tax laws tend to encourage a holding period longer than six months. Indeed it is not wholly accurate to characterize the operation of the statute as "harsh" or "crushing" without some qualification. Its bite is sharp only in the limited area of transactions it covers, see Gratz v. Claughton, 2 Cir., 187 F.2d 46, certiorari denied 1951, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353, but for the insider who waits six months and one day after purchase to avoid a short term gain there is no "bite" at all except as conscience calls the use of inside information on sales after six months as reprehensible as on sales within six months. One can speculate on whether the moral or ethical values are altered by the passage of 24 hours but the statute makes an honest if not honorable man out of the insider in that period.

Large areas of "insider" conduct were consciously left untouched by Congress for reasons dictated by practicalities rather than ethics or pure logic. A line had to be drawn somewhere by the lawmakers, as they must do in the laws of marriage, divorce, legitimacy, real estate, wills and a host of other subjects governed by statute. But the consciously limited scope of the statute is no reason for us to seek yet further limitations of what is remedial legislation.

■ The statute itself, independent of its legislative history, seems to treat directors and officers as one category of "insiders" and 10% beneficial owners as another. There is, of course, a logical and practical basis for distinction. Generally, although there are important exceptions in certain circumstances, officers and directors have more ready access to the intimate business secrets of corporations and factors which can affect the real and ultimately the market value of stock than does even so large a stockholder as a "10% beneficial owner." This is not to discount the potential influence of the latter but simply to acknowledge the basis for the different treatment accorded them by Congress. Moreover, a director or officer can usually stimulate more directly actions which affect stock values and have knowledge of factors which might depress values. Notwithstanding exceptions and variations these general propositions have a foundation in experience and furnish an adequate basis for a difference in treatment of 10% owners. Beyond doubt it was considerations of this character which led Congress to make a provision concerning 10% owners which was not made with respect to officers and directors. It is found in the language:

> "This subsection shall not be construed to cover any transaction where *such beneficial owner* was not such *both* at the time of purchase and sale, or the sale and purchase, of the security involved * * *" (Emphasis added.)

Under the familiar canon of construction, *expressio unius est exclusio alterius,* the presence of this emphatic and unmistakable clause in the portion governing the one class demonstrates a clear legislative intent that no such provision applies to the other. See Loss, Securities Regulation 578 (1951); Cook and Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 612, 632 (1953); Rubin and Feldman, Statutory Inhibitions Upon Unfair Use of Corporate Information by Insiders, 95 U.Pa.L.Rev. 468, 488 (1947).

While it is clear that actual reliance, motive and intent are not relevant in determining whether or not Section 16(b) is applicable to a given transaction, the potentialities as well as the actualities of a director's position are illustrated by what we find in the record in the instant case. On March 25, 1957, a week after a director's meeting at which Klawans

moved a resolution that the corporation purchase 4800 shares of its own stock, he privately sold 9000 shares of this same stock. Purchases in these circumstances by the issuing company would, of course, have some tendency to support the market price in the face of substantial sales.

Although there is no case directly in point, cases in this circuit construing other aspects of this statute support the position we take here. Section 16(b) of the Securities Exchange Act has been considered in one phase or another by this court in three important prior opinions. Judge Clark's opinion in Smolowe v. Delendo Corp., supra, considered the statute's constitutionality, its legislative purpose, the method for computing profits, and certain other aspects. This was followed by Judge Hand's opinion in Gratz v. Claughton, supra, which, like the Smolowe case indicated that a construction of the statute as a remedial measure in favor of the corporation was the only means of giving full effect to the plain congressional intent.

Most recently in Stella v. Graham-Paige Motors Corp., supra,[3] this court gave approval to the District Court's holding that the purchase which makes a person a 10% beneficial owner may be included notwithstanding the express proviso. All three of these cases underscored, either expressly or impliedly, Judge Clark's statement in the Smolowe case that:

"The statute is broadly remedial. Cf. Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89. Recovery runs not to the stockholder, but to the corporation. We must suppose that the statute was intended to be thoroughgoing, to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty. Cf.

Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S. Ct. 493, 85 L.Ed. 820; In re Mountain States Power Co., 3 Cir., 118 F.2d 405; Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333; In re Republic Gas Corp., D.C.S.D. N.Y., 35 F.Supp. 300." Supra, 136 F.2d at page 239. (Footnote omitted.)

In the Gratz opinion Judge Hand read into the statute the same high duty that applies to trustees generally:

"Nobody is obliged to become a director, an officer, or a 'beneficial owner'; just as nobody is obliged to become the trustee of a private trust; but, as soon as he does so, he accepts whatever are the limitations, obligations and conditions attached to the position, and any default in fulfilling them is as much a 'violation' of law as though it were attended by the sanction of imprisonment. * * *

"* * * When they [directors and officers] bought shares, they came literally within the conventional prohibitions of the law of trusts; yet the decisions [prior to the enactment of Section 16(b)] were strangely slack in so deciding." Supra, 187 F.2d at page 49.

Judge Hand emphasized this theme at another point, saying:

"The question is in substance the same as when a trustee's account is to be surcharged, for, as we have said, the statute makes the fiduciary a constructive trustee for any profits he may make." Supra, 187 F.2d at page 51.

■ These prior holdings do not answer the problem presented here, but they do show a pattern of this court's view that the purpose of the statute is remedial, rather than penal, and that it must be strictly construed in favor of the corporation and against any person who makes profit dealing in the corpo-

3. For the various steps in this case, see D.C.1952, 104 F.Supp. 957; D.C.1955, 132 F.Supp. 100; 2 Cir., 232 F.2d 299,

certiorari denied 1956, 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52; D.C.1957, 149 F. Supp. 390; 2 Cir., 1958, 259 F.2d 476.

ration stock. Of course, the statute cannot be extended beyond the limits of its language, but as we have pointed out above, the language, given a rational interpretation is broad enough to cover appellant's transaction in this instance. Thus, we hold that Section 16(b) is applicable to a short swing transaction even though the person involved was a director only at the time of the sale and not at the time of the purchase.

■ On the primary issue of liability appellant Klawans finally argues that the Securities and Exchange Commission has exempted the transaction here under dispute from the coverage of Section 16(b). Perhaps the Commission has the power to do so under the last clause of the subsection. Cf. Greene v. Dietz, 2 Cir., 1957, 247 F.2d 689, 692. We need not decide whether it does or not, however, since we find that it has not sought to exercise that power. In support of his argument that the exemption has been created, appellant points to Securities and Exchange Commission Rule X–16A–10, 17 C.F.R. § 240.16a–10 (1958 Supp.), which reads:

"Any transaction which has been or shall be exempted by the Commission from the [reporting] requirements of section 16(a) shall, in so far as it is otherwise subject to the provisions of section 16(b), be likewise exempted from section 16(b)."

He then argues that by Rule X–16A–1, 17 C.F.R. § 240.16a–1 (1949), and the forms prescribed thereunder, the Commission has rendered him exempt from reporting the transactions here under dispute. We agree that, if he is exempt from the Section 16(a) reporting requirement, he would be exempt under Rule X–16A–10 from the accounting requirements of Section 16(b). We believe, however, that he is not exempt from either the reporting or accountability.

Commission Rule X–16A–1(b), 17 C.F.R. § 240.16a–1(b) (1949), prescribes the rule for use of Form 4 and provides in pertinent part:

"Every person who at any time during any month has been * * * a director * * * of the issuer of such security, shall, if there has been any *change* during such month *in his ownership* of any equity security * * * file * * * a statement on Form 4 * * * indicating his ownership at the close of the calendar month *and such changes in his ownership* as have occurred during such calendar month." (Emphasis added.)

Appellant would have us read this rule as requiring a report only if there had been both a purchase and a sale of stock by a director *while* a director. We do not give it such a restricted interpretation. The Commission rule states in clear language that a director shall report all "changes in his ownership." This does not necessarily mean "ownership" which has been acquired by the director while a director. We therefore hold that appellant was required to report on Form 4 all sales of Williams-McWilliams stock made by him after March 18, 1957, even though the stock was purchased before he became a director. It follows that he is not relieved through the application of this rule of his obligations under Section 16(b).

II—Treatment of Losses.

■ The argument that losses and profits made by defendant on trading in Williams-McWilliams stock should be matched against each other to determine liability must be answered in the negative on the authority of Smolowe v. Delendo Corp., supra, and Gratz v. Claughton, supra. This result is consistent with the policy enunciated in the Smolowe case that "the statute was intended to be thoroughgoing, to squeeze all possible profits out of stock transactions." Supra, 136 F.2d at page 239. Both of these cases considered the problem of how "profits" under the statute should be calculated, and both concluded the highest sale price should be matched against the lowest purchase price and that there should be no offset for losses. Indeed, in the Gratz case this court affirmed a judgment of $300,000 against

the insider defendant although, during the pertinent periods, he suffered a net loss of $400,000 on trading in the stock for which he was charged under Section 16(b). Judge Hand observed that while this result was "crushing * * * it should certainly serve as a warning, and may prove a deterrent." Supra, 187 F. 2d at page 52.

### III—DIVIDENDS AS SECTION 16(b) PROFITS.

Appellees challenge [4] Judge Ryan's refusal to include dividends in recoverable "profit realized" under Section 16(b). The question is thus presented as to whether, in the circumstances of this case, dividends received by appellant are includable in the "profit realized" by him from the "purchase and sale" of the Williams-McWilliams stock under the circumstances we have already considered.

Judge Ryan held the dividends were not includable, reasoning that the market price of a stock represents a "bargain" which includes and contemplates any dividends which may be paid. Hence, on this theory, the inclusion of dividends received in the calculation of "profit" under Section 16(b) would impose a double liability on appellant not provided for by the statute. So far as dividends which have been publicly announced before the purchase of stock by the insider and before he became such, we agree with Judge Ryan's reasoning.

The dividends fall into three categories which must be separately considered. On three different dates Williams-McWilliams declared dividends: December 6, 1955, December 10, 1956, and March 18, 1957. We shall refer to these as the 1955, 1956 and 1957 dividends. The 1955 dividend was payable on November 2, 1956; the 1956 on February 1, 1957; and the 1957 on May 1, 1957.

Appellant's first purchase of Williams-McWilliams stock that is in issue was made on October 1, 1956, long after the 1955 dividend was declared. At the time of his purchase it can reasonably be assumed that the forthcoming dividend was a matter of public knowledge. Appellant was in no different position with respect to this dividend from that of any other member of the stock buying public. In other words, appellant was not an "insider" either at the time he purchased the stock or at the time the dividend was declared. For this reason we think Judge Ryan correctly held appellant was not accountable for the 1955 dividend of $262.50.

When the 1956 dividend was declared, appellant was the owner of a substantial amount of Williams-McWilliams stock, but he was not then a director, an officer, nor the owner of 10 percent or more of the company's stock and hence had neither access to "inside" information nor influence over corporate action. He was therefore in no different legal position than was any other holder of less than 10 percent of the company's stock on the date when the critical action with respect to the 1956 dividend was taken. Hence Judge Ryan correctly held appellant was not accountable for the 1956 dividend of $2850. This is not inconsistent with our primary holding that a director need not be such both at the time of purchase and time of sale of stock in order to be accountable under Section 16(b). Our primary holding simply gives effect to the statutory mandate which presupposes that, at some moment before making a sale of stock, the insider was in an official position which he *could have* used to influence the sale price. (*Supra*, 267 F.2d 845.)

Appellant was a director when the 1957 dividend [5] was declared and in-

---

4. The record and docket page as certified to us by the District Court failed to show that appellees had taken a cross appeal, and we therefore originally held that appellees had no standing to ask for any relief. Counsel for appellees subsequently demonstrated to us that notice of a

cross appeal had been properly filed and was apparently omitted from the record by inadvertence. We now revise our opinion to consider this issue.

5. This was in reality two dividends: a $0.50 cash dividend and a 5% stock dividend.

deed he moved its declaration. His position as a director presents different problems with respect to this dividend, which amounted to $2362.50.[6] He did not, however, receive this 1957 dividend with respect to any shares subsequently *sold at a profit*. Matching the purchases and sales in a manner most favorable to the corporation, the shares on which the 1957 dividends were declared and paid to appellant were sold by him at a loss of $8963.43, which was greater than the amount of the dividends.

Section 16(b) only makes an insider accountable for "any profit realized * * * from any purchase and sale," and the dividend received on a particular share can not logically be considered as profit separate and apart from the difference between purchase and sale price. In this situation we must evaluate the *total* result of the ownership of the particular shares, *i. e., the net result* of purchase, ownership benefits, and sale. This is not inconsistent with our holding, *supra*, that a profit on the sale of one share cannot be offset by a loss on the sale of another share.

It follows then, that in the circumstances shown by this record as to each of the three different categories of dividends there is no "profit realized" within the meaning of the statute. Situations may well arise relative to dividends where they are so inextricably connected with the "purchase and sale" of stock [7] and possible manipulation by insiders for their own benefit and to the detriment of the corporation and the investing public as to compel the formulation of a rule on the subject under discussion in order to prevent the frustration of the statutory purpose described in the main part of this opinion. The resolution of these issues must await cases in which such issues are presented.

6. Cash dividends at $0.50 per share totaling $750 plus stock dividends of 75 shares (a 5% stock dividend) valued at $1612.50. Valuation of the stock dividend is based on the highest price received by appellant for any sale after the date the stock dividend was paid.

7. Cf. Falco v. Donner Foundation, Inc., CCH Fed.Sec.L.Rep. ¶90,612 S.D.N.Y., reversed 2 Cir., 1953, 208 F.2d 600, 40 A.L.R.2d 1340.