Rebecca LOWEY, Plaintiff,

v.

HOWMET CORPORATION and Pfizer, Inc., Defendants.

No. 73 Civ. 3168 (JMC).

United States District Court, S. D. New York.

Jan. 6, 1977.

Kaufman, Taylor, Kimmel & Miller, New York City (Stanley L. Kaufman, New York City, of counsel), for plaintiff Lowey.

Seward & Kissel, New York City (Eugene P. Souther, New York City, of counsel), for defendant Howmet.

Dewey, Ballantine, Bushby Palmer & Wood, New York City (J. Paul McGrath, New York City, of counsel), for defendant Pfizer.

## OPINION

CANNELLA, District Judge:

The cross-motions for summary judgment are denied.

Plaintiff, a stockholder of Pfizer Incorporated ["Pfizer"], commenced this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover for Pfizer "short-swing" profits realized upon purchases and sales of Pfizer stock made by Howmet Corporation ["Howmet"] in October and November of 1972. Plaintiff alleges that Felix Rohatyn, a director of Howmet, was deputized by Howmet to serve as a member of the Pfizer Board of Directors and thus Howmet was a director of Pfizer within the meaning of Section 16(b). Plaintiff has made the requisite demand upon Pfizer and it has not been complied with.[1] Presently before the Court are cross-motions for summary judgment interposed by plaintiff Rebecca Lowey and defendant Howmet Corporation.

## FACTS

The underlying facts in this dispute are largely uncontested. In early 1970 Howmet underwent a corporate reorganization pursuant to which its Howmedica Division became a wholly-owned subsidiary, named Howmedica, Incorporated ["Howmedica"]. As part of the reorganization, eighty percent of the Howmedica common stock was spun-off to Howmet's stockholders, with Howmet retaining the balance. In order to obtain favorable tax rulings from the Internal Revenue Service ["IRS"], however, Howmet agreed to dispose of its remaining twenty percent interest in Howmedica by May 26, 1973, three years after the effective date of the reorganization.

In early 1971 Howmedica's management concluded that it would be in Howmedica's best interests to merge with a large concern in the pharmaceutical or health care field. (Howmedica was engaged in the manufacture of certain health care products.) Both Howmedica and Howmet realized that such a merger would prevent a depression in the market price of Howmedica's common stock, one that might result from the sale of Howmet's interest in Howmedica on the open market.

With this in mind, Howmedica retained Lazard Freres & Company ["Lazard Freres"], an investment banking firm, to find an appropriate merger partner. Rohatyn, a member of both the Howmet and Howmedica boards of directors at that time, was a partner in Lazard Freres.

Negotiations culminating in a nearly consummated but aborted merger between Howmedica and G. D. Searle & Company ensued, after which Jarvis Slade, a Howmedica director and member of the New York Securities Company, another investment banking concern, recommended to Pfizer that it consider the acquisition of Howmedica. This occurred in April of 1971. After considering Howmedica, as well as several other candidates, Pfizer advised

---

1. The common stock of Pfizer, at all material times herein, was listed and traded on the New York Stock Exchange, a national securities exchange, and thus was subject to Section 16(b).

Slade that it was not interested in acquiring Howmedica.[2]

Shortly thereafter, in August 1971, Rohatyn was elected to the Pfizer board of directors. He also attempted to interest Pfizer in a merger with Howmedica, and was successful where Slade had not been. A Pfizer memo dated January 11, 1972 indicated that, although the earlier investigation had generated "insufficient enthusiasm" to warrant further consideration, Rohatyn's renewed sales pitch was attractive.

Pfizer's change of mind proved complete, as on February 24, 1972 it reached an agreement in principal with Howmedica concerning the merger. Pursuant to the final terms of the merger agreement, each share of Howmedica's common stock was to be exchanged for .925 shares of Pfizer common. The final agreement was approved by Howmedica's board of directors, Rohatyn not participating, on July 21, 1972 and was consummated on October 30, 1972. Howmet received 584,817 shares of Pfizer common stock in exchange for its Howmedica holdings.

Prior to the consummation of the merger, Howmet sought an IRS ruling on the effect a merger would have on its previous agreement to dispose of the Howmedica stock before May 26, 1973. On March 27, 1971 the IRS informed Howmedica that the Pfizer stock received pursuant to the merger likewise had to be disposed of before May 26, 1973, in accordance with the conditions imposed pursuant to the 1970 reorganization. Howmet disposed of its Pfizer stock in a public offering underwritten by Lazard Freres when, on November 14, 1972, its registration was complete.[3]

## DISCUSSION

Generally stated, plaintiff's theory is that, although Rohatyn's appointment to the Pfizer board of directors in August 1971 was not as a deputy or representative of Howmet,[4] he thereafter began to act as Howmet's representative in promoting a Pfizer-Howmedica merger, thereby ensuring that Howmet would obtain the benefit of a Howmedica merger with a large company before Howmet disposed of the Howmedica stock.[5] In essence, plaintiff contends that Howmet "deputized" Rohatyn as its representative on the Pfizer board of directors based upon the following facts:

1) Rohatyn was a director of both Pfizer and Howmet, and as such was partially responsible for the success of the merger;

2) Rohatyn, or his firm, Lazard Freres & Company, was paid a fee by Howmet for negotiating the merger of Howmedica into Pfizer;

3) Lazard Freres had responsibility for the timing of Howmet's public offering of its Pfizer stock and was the managing underwriter thereof; and

4) Rohatyn had been expressly designated by Howmet and Howmet's parent corporation, Pechiney Ugine Kuhlmann Corporation, to be their representative on the Howmedica board of directors.

▉ In that there are contested issues of material fact with respect to Rohatyn's powers and duties as a member of both the

---

**2.** Letter from Jesse G. Heiges to Jarvis J. Slade (August 10, 1971).

**3.** Howmet asserts that it would have preferred the registration to have been effective on October 30, 1972, the date of the merger, but that Securities and Exchange Commission regulations would have denied the merger pooling of interest treatment had this been done.

**4.** Rohatyn joined the Pfizer board of directors at the request of John J. Powers, Jr., a friend of ten years and Pfizer's Chairman of the Board and chief executive officer. Rohatyn did not consult with any Howmet representative or seek that company's approval prior to joining Pfizer's board.

**5.** Although plaintiff does not contend that Rohatyn's appointment to the Pfizer board in August 1971 was as Howmet's deputy or representative, 16(b) liability will attach if Howmet was a director of Pfizer through Rohatyn either at the date of purchase, *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 266–69 (2d Cir. 1969), *cert. denied*, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970), or at the date of sale, *Adler v. Klawans*, 267 F.2d 840, 844 (2d Cir. 1959), of the Pfizer stock.

Howmet and Pfizer boards of directors and as a partner in the firm of Lazard Freres & Company, and because the ultimate finding of fact in this case, whether Rohatyn was deputized by Howmet to represent its interest on the Pfizer board, rests on a detailed analysis of a mix of underlying factors, the cross-motions for summary judgment herein are denied.

■ The Supreme Court, in recognizing the possibility that a partnership or corporation could incur 16(b) liability through the deputization theory, has determined that the question of deputization is one of fact to be determined on a case-by-case basis. *Blau v. Lehman*, 368 U.S. 403, 408–10, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); *accord, Feder v. Martin Marietta Corp.*, 406 F.2d 260, 263 (2d Cir. 1969), *cert. denied*, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970). That the issues of whether Howmet actually deputized Rohatyn to represent its interests as a director of Pfizer and whether it was Rohatyn's advice and counsel, based on his inside knowledge of the affairs of Pfizer, that caused Howmet to structure these transactions as it did, are subject to a determination of numerous disputed factual issues can be easily seen by an examination of the leading cases in the area.

In *Blau v. Lehman*, 368 U.S. 403, 404–10, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962), it was asserted that Joseph A. Thomas, a member of Lehman Brothers, was deputized by Lehman Brothers to represent its interest as a director of Tide Water Associated Oil Company ["Tide Water"], in whose stock Lehman Brothers traded. The Supreme Court deemed controlling trial court findings that Thomas had never discussed the operating details of Tide Water affairs with any member of Lehman Brothers; that Lehman Brothers purchased the Tide Water securities without consulting Thomas and wholly on the basis of public announcements by Tide Water; and that Thomas did not know of Lehman's intent to buy Tide Water stock until after the initial purchases had been made.

In *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 264–65 (2d Cir. 1969), *cert. denied*, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970), the Second Circuit determined that Martin Marietta Corporation ["Martin Marietta"] had deputized George Bunker to represent its interests as a director of Sperry-Rand Corporation ["Sperry"]. Of considerable importance was evidence that Bunker, as Martin Marietta's chief executive, was ultimately responsible for all of Martin's purchases of Sperry stock; was aware of information relating to Sperry's short-range prospects; discussed Sperry's affairs with two other Martin Marietta officials; and participated in sessions during which Martin Marietta's investment in Sperry was reviewed. Also significant was the view, shared by Sperry and Martin Marietta, that Bunker acted as Martin Marietta's deputy on the Sperry board.

Rohatyn's knowledge of Pfizer's affairs is conceded. Rohatyn testified at his deposition that he had access to information that was available to all Pfizer directors, including financial reports, profit and sales projections, budgets, as well as information regarding prospective new products and acquisitions, proposed financing and possible extraordinary expenses. The extent of Rohatyn's disclosure of such possibly confidential information to Howmet officials, however, is hotly contested. Rohatyn himself testified that he "may very well" have spoken to Howmet's board about the quality of Pfizer as a corporation and possibly even regarding the quality of Pfizer's securities. Howmet, of course, asserts that no *inside* information was disclosed by Rohatyn. What specific facts pertaining to Pfizer were discussed by Rohatyn with Howmet, if any, and whether they constituted non-public inside information must await resolution on a fuller record.

Also in dispute is the amount of control Rohatyn exercised, directly or indirectly, over Howmet's decisions concerning Pfizer. Howmet urges that, as one of eleven outside directors of Howmet, one who did not even vote on these matters, Rohatyn had virtually no control. On the other hand, documents submitted by plaintiff indicate that Howmet's board of directors did con-

sider Rohatyn's recommendations concerning the Pfizer-Howmedica merger in reaching certain decisions. On June 21, 1972, at a meeting of the committee of the Howmet board of directors designated to consider certain requests by Pfizer in connection with the proposed merger, Rohatyn described the negotiations that led up to the agreement in principle with Pfizer and indicated that Howmet would probably realize substantially more on its Howmedica stock as a result of the merger than by disposing of it on the open market. Rohatyn thereupon left the meeting and approval of the requests was unanimously recommended. The executive committee of the board of directors accepted this recommendation. That same day, the Howmet board of directors voted its approval of the merger.

In addition, it is possible that Rohatyn, through Lazard Freres, aided and advised Howmet in devising the method and timing of Howmet's disposition of its investment in Howmedica within the confines of the various IRS and SEC rulings. Finally, there is disagreement as to whether the merger of Howmedica into Pfizer was actively sought by Howmet.

The various contested issues in this case can be summed up as follows: As a partner of Lazard Freres, Rohatyn represented both Howmedica and Howmet in the merger negotiations; as a member of the Pfizer and Howmedica boards of directors, he served as an intermediary between those two corporations during the negotiations; and, as a director of Howmet, Rohatyn represented, at least nominally, the interests of a principal shareholder of Howmedica and major beneficiary of the merger. How well, or poorly, Rohatyn was able to separate these functions is a complex question, involving an assessment of Rohatyn's function in each organization's decision-making process, and one that must await trial and a full development of the record.

Defendant argues that, even if Rohatyn was a deputy of Howmet for Section 16(b) purposes, the transactions involved are "unorthodox" as defined by the Supreme Court in *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), and thus are subject to Section 16(b) treatment only if there existed a possibility for speculative abuse. Defendant, of course, contends that no such possibility existed. The Court disagrees. If Rohatyn was Howmet's representative on Pfizer's board of directors—a finding that the Court has already determined must await trial—the possibilities for abuse of inside information abound.

### CONCLUSION

For the reasons heretofore stated, the instant cross-motions for summary judgment are hereby denied.

SO ORDERED.