**ALLOYS UNLIMITED, INC., Plaintiff,**

v.

**Peter GILBERT, Defendant.**

**No. 70 Civ. 4.**

United States District Court,
S. D. New York.

Nov. 4, 1970.

Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, for plaintiff; Richard F. Horowitz, New York City, of counsel.

Rubin, Wachtel, Baum & Levin, New York City, for defendant; Martin A.

**618**

Coleman, and Carl R. Aron, New York City, of counsel.

MANSFIELD, District Judge.

Upon this motion for summary judgment in an action for recovery of short-swing profits under § 16(b) of the Securities Exchange Act of 1934, we are faced with the question of whether sale of pledged stock constitutes a "sale" within the meaning of § 16(b). Upon the undisputed facts we conclude that it does and award summary judgment on the issue of liability, leaving for trial the issue of damages. See Rule 56(d), F.R.Civ.P.

The uncontroverted facts are as follows: On September 20, 1968, defendant, while vice-president and a director of plaintiff, purchased 2,800 shares of unregistered common stock that had been issued by plaintiff, paying $83,896. At the time of the purchase defendant was the owner of other shares registered in his name, which he had previously pledged with Security National Bank to secure its loans to him pursuant to a note authorizing the bank to sell such collateral "although said Obligations may be contingent or unmatured, whenever in its discretion Bank considers such sale necessary for its protection."

On December 24, 1968, which was more than six months after the pledge but less than six months after defendant's purchase of the 2,800 unregistered shares, the bank sold 2,800 shares of the pledged collateral for the sum of $125,-153, applying the proceeds to reduction of defendant's indebtedness to it. Before selling the collateral the bank advised defendant that it planned to sell some of the pledged collateral for the reason that there was too great a concentration of plaintiff's stock as the collateral securing his borrowings from it. There is no suggestion that defendant sought to substitute any other collateral for the 2,800 pledged shares. At the time of the sale defendant was still an officer and director of plaintiff.

On January 2, 1970, plaintiff commenced the present action pursuant to §

16(b), seeking recovery of $41,257 (the difference between the price paid by defendant in September for the 2,800 unregistered shares and that credited to his account by the bank upon its sale of the 2,800 pledged shares registered in his name) as "short-swing" profits. Defendant denies liability, contending that the bank's sale of the pledged stock did not constitute a "sale" as that term is used in § 16(b) because the transaction was involuntary as far as defendant was concerned, and, being carried out solely by decision of the bank, it did not represent the type of speculation by a corporate officer against which § 16(b) is directed. Defendant argues that the purpose of § 16(b) is to bar speculation by a corporate outsider in his own company's securities, which usually occurs as the result of his having inside information; and that such speculation cannot exist unless the fiduciary has the power to decide whether to buy or sell, which did not exist here for the reason that the decision to sell the 2,800 shares was made solely by the bank in the exercise of its unfettered control over the collateral.

■ The simple answer is that § 16(b) does not require proof of speculation, or intent to speculate, on the part of the insider. Rather than include such a requirement, which would in many cases be difficult or impossible to prove, Congress decided that the evil could best be deterred by simply providing that the insider would automatically become liable upon proof of a short-swing transaction within the arbitrarily prescribed time limit of six months, regardless of his good or bad intent. Smolowe v. Delendo Corp., 136 F.2d 231, 235 (2d Cir. 1943), cert. denied 320 U.S. 751, 64 S. Ct. 56, 88 L.Ed. 446 (1943); Feder v. Martin Marietta Corp., 406 F.2d 260, 263 (2d Cir. 1969); Marquette Cement Mfg. Co. v. Andreas, 239 F.Supp. 962, 965–66 (S.D.N.Y.1965).

■■ All of the essential elements of a § 16(b) transaction are here established, i. e., defendant's purchase of 2,800

of plaintiff's shares which were listed on a national securities exchange while he was its officer and the sale within six months of 2,800 such shares owned by him while still an officer, resulting in an economic benefit or profit to him. Although defendant may not have made the immediate decision to sell the 2,800 shares in December, he was aware, when he purchased 2,800 shares in September, that he had given authority to the bank to make such a sale and it was a possible consequence of his earlier pledge. Furthermore, while we do not have evidence of defendant's financial condition, he was offered the opportunity, immediately prior to the December sale, of heading it off by substituting refinancing elsewhere, since the bank advised him of its intention to sell the 2,800 shares, apparently in the hope that he might substitute variegated collateral for those shares. In any event it is apparent that he took the risk of such a sale when he bought 2,800 shares in September.

We are not here dealing with a transaction where there is no possibility of speculation based upon inside information, such as the conversion of convertible preferred stock into common, or an exchange of shares with a subsidiary, a merger, sale of assets, or the like. See Blau v. Lamb, 363 F.2d 507 (2d Cir. 1966), cert. denied 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967). In contrast to the circumstances in such cases the transaction here, while involuntary on the surface, was one sufficiently within the defendant's control to "possibly permit an insider to use inside information unfairly," which is the test. *Id.*, p. 516. If a sale of pledged collateral were to be excluded from the prohibition of § 16(b), an insider, after a sharp increase in the market price of shares recently purchased by him, could, upon receiving inside information likely to depress the market price of his stock, pledge it for a loan and, when the market price declined, simply default in his obligation to put up more collateral and allow the lender to sell the collateral to satisfy the loan. The same speculative maneuver would be feasible with respect to earlier-pledged stock, depending upon the nature of the inside information. We must, therefore, conclude that the bank's sale of the shares owned by defendant and held in his name constitutes a "sale" within the meaning of § 16(b).

■ Normally there can be no dispute as to the "profit" realized by a corporate insider upon a short-swing transaction which is measured by the difference between his purchase and sale price. Adler v. Klawans, 267 F.2d 840 (2d Cir. 1959); Smolowe v. Delendo Corp., *supra*; Gratz v. Claughton, 187 F.2d 46, 51–52 (2d Cir. 1951), cert. denied 341 U.S. 920, 71 S.Ct. 741, 95 L. Ed. 1353 (1951). Although the shares sold need not be the identical shares purchased, Blau v. Allen, 163 F.Supp. 702, 704 (S.D.N.Y.1958), the measure of recovery assumes that the shares bought and sold are both fungible, Gratz v. Claughton, *supra* at 51; Newmark v. RKO General, Inc., 425 F.2d 348, 357–358 (2d Cir.), cert. denied 91 S.Ct. 64, 27 L.Ed.2d 91 (Oct. 1970). Here the 2,800 shares purchased in September had not been registered with the SEC and hence could not be freely traded on a national securities exchange, whereas those sold in December were SEC-registered and freely marketable. Since so-called "investment letter" stock usually cannot be sold at as high a price as the market price of freely marketable, SEC-registered shares, which are usually traded at the exchange price, the value of the shares purchased in September remains to be determined.

The motion is granted to the extent indicated.

It is so ordered.