**SPRAGUE ELECTRIC COMPANY, Plaintiff,**

**v.**

**MOSTEK CORPORATION, Defendant.**

**MOSTEK CORPORATION, Plaintiff,**

**v.**

**SPRAGUE ELECTRIC COMPANY, Defendant.**

**Civ. A. Nos. CA–3–79–1320–D, CA–3–79–1322–D.**

United States District Court, N. D. Texas, Dallas Division.

April 25, 1980.

James S. Ramsey, Jr., Timothy A. Duffy, Crutcher, Hull, Ramsey & Jordan, Dallas, Tex., for plaintiffs; Russell H. Beatie, Jr., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, of counsel.

Robert A. Wooldridge, Richard L. Adams, Worsham, Forsythe & Sampels, Dallas, Tex., for defendants.

### ORDER

ROBERT M. HILL, District Judge.

Came on for consideration the following motions: (1) Mostek's Motion for Summary Judgment; and (2) Sprague's Motion for Leave to Amend. The court has considered these motions, the briefs of the parties, and the discovery on file, and is of the opinion that the latter should be granted and the former should be granted in part.

### I. *Background*

Mostek Corporation was founded in 1969 with an initial capitalization of $20,000 from its founders and $250,000 from Sprague Electric Company. On December 3, 1971, Sprague, Mostek, and certain other Mostek stockholders entered into a Stockholder's Agreement ("1971 Agreement").

Paragraph 14 of the 1971 Agreement provides that:

> Mostek and/or its designees shall have the first right of purchase of any Mostek stock . . . which a Party to this Agreement . . . desires to sell anyone for the same price and on the same conditions offered to such other person. The selling Party shall notify Mostek in writing of the terms and conditions of such offer and of his or its desire to sell. Mostek and/or its designees shall within sixty (60) days . . . from and after the mailing date of such notice purchase said Mostek stock⸴ . . . on the terms and conditions stated in said notice, failing which purchase, Mostek's first right of purchase as to the shares being sold shall be cancelled and forever extinguished.

At all times relevant to this action, Mostek's common stock was traded on the over-the-counter market and registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78*l*. Since 1969, Dr. John L. Sprague, the President of Sprague, has been a member of Mostek's Board of Directors. At all times relevant to this action, Sprague was the beneficial owner of more than 10% of Mostek's common stock.

In November of 1976, Sprague owned 39% of Mostek's common stock. At this time, Sprague was acquired by General Cable Corporation (now GK Technologies) through a tender offer. In 1977–78, Sprague's equity interest in Mostek decreased to about 21%. It desired to maintain its ownership at the 20% level for tax purposes.

In May, 1979, Mostek informed Sprague that it would soon be making a public offering of up to 825,000 shares of Mostek common stock. In order to keep its interest at the 20% level, Sprague agreed on May 15 to purchase from Mostek an additional 235,000 shares of Mostek common stock simultaneously with and conditional upon the consummation of the public offering. On June 14, 1979, the public offering took place and Sprague acquired 235,000 shares from Mostek for $22.05 per share, a total of $5,181,-750. These shares were exempted from Paragraph 14 of the 1971 Agreement.

In the summer of 1979, as in the past, Mostek was concerned that its vulnerability to a takeover was enhanced by the existence of Sprague's large block of Mostek stock. During this period there were a number of discussions with various parties concerning the feasibility of Sprague's sale of its Mostek stock to Mostek or to a third party acceptable to Mostek. These negotiations included discussions with Gould, Inc. ("Gould"), but Mostek rejected Gould's advances.

On September 5, 1979, Gould offered to purchase Sprague's entire block of Mostek common stock for $51,539,460 in cash, which is equivalent to $42.00 per share before expenses. Sprague accepted this offer, and entered into a Stock Purchase Agreement with Gould which was contingent on Mostek's decision not to exercise its first refusal right under the 1971 Agreement. The closing could also be delayed by mutual agreement, court order, or statutorily required waiting period, but was in no event to occur after December 31, 1979. Sprague advised Mostek of its agreement with Gould on September 5, thus triggering Mostek's 60 day period in which to decide whether to exercise its first refusal right. Absent one of the listed contingencies, the sale from Sprague to Gould was to take place on November 7, 1979.

On September 7, 1979, Mostek filed an antitrust suit against Gould, asking that Gould's purchase of the Mostek stock be enjoined. In addition Mostek, unable itself to finance the purchase of Sprague's Mostek stock, began to search for a more friendly purchaser. The culmination of this search was Mostek's acceptance, on September 26, of an offer by United Technologies Corporation ("UT") to purchase all Mostek common stock at a cash price of $62 per share. Also on September 26, Mostek informed Sprague of its intention to exercise its right of first refusal under the 1971 Agreement, demanding transfer of the shares on September 27, 1979. Thus on September 27, Sprague sold Mostek 1,227,130 shares of Mostek common stock for $51,539,460 in cash, which is equivalent to $42 per share.

On October 23, 1979, two lawsuits were filed between Mostek and Sprague regarding the possible liability of Sprague under Section 16(b) of the Securities Exchange Act ("Section 16(b)"). On December 4, 1979, the cases were consolidated under the style of the suit filed by Sprague. On January 8, 1980, Mostek filed a motion for summary judgment, to which Sprague replied on February 8, 1980, and March 20, 1980. In addition, Sprague has filed a motion for leave to file amended complaint to allege against Mostek a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Both of these motions are ripe for decision.

## II. *Summary Judgment*

Mostek's summary judgment motion involves the application of Section 16(b), 15 U.S.C. § 78p(b), to the June 14, 1979, and September 27, 1979, stock transfers between Sprague and Mostek. Mostek contends that Section 16(b) clearly covers these transactions. Sprague argues that it is not liable under Section 16(b) because: (1) its September 27 sale to Mostek was legally compelled and thus exempt from Section 16(b); and (2) Section 16(b) is inapplicable to sales that are involuntary if no possibility of speculative abuse exists. Because the court finds that the sale was voluntary and a possibility of speculative abuse did exist, Sprague's contentions are rejected.

Section 16(b) provides in pertinent part:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

This provision requires the inside, short-swing trader to disgorge all profits realized on "purchases" and "sales" within six months without proof of actual abuse of inside information and without proof of intent to profit on the basis of such information. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595, 93 S.Ct. 1736, 1745, 36 L.Ed.2d 503 (1973).

The question in this case is whether the September 27 transfer of stock from Sprague to Mostek is a "sale" within the meaning of Section 16(b). In making such determinations, the courts have adopted a "pragmatic" test, looking at the alleged violation in light of congressional purpose: "Every transaction which can reasonably be defined as a purchase [or sale] will be so defined, if the transaction is of a kind which can possibly lend itself to the speculation encompassed by Section 16(b)." *Ferraiolo v. Newman*, 259 F.2d 342, 345 (6th Cir. 1958).

In considering whether the type of transaction in issue gives rise to the potential for speculative abuse, two factors are of primary importance: (1) access to inside information; and (2) the ability to influence the timing of a transaction. *Morales v. Gould Investors Trust*, 445 F.Supp. 1144, 1153 (S.D.N.Y.1977). It is in analyzing these factors that the voluntary or involuntary nature of the transaction becomes relevant. *See, e. g., Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. at 599, 600, 93 S.Ct. at 1747; *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1056 (2d Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). Involuntariness alone does not make a transaction exempt from Section 16(b), but rather is an element which is considered in conjunction with others in determining whether the transaction involves the possibility of speculative abuse. *Oliff v. Exchange International Corp.*, 449 F.Supp. 1277, 1294 (N.D.Ill. 1978).

### A. *Voluntariness*

Sprague contends that its transfer of the shares to Mostek was involuntary since it was compelled by the 1971 Agreement. The court finds, however, that it was not "involuntary" within the meaning of Section 16(b) case law.

Sprague does not contend that its signing of the 1971 Agreement was involuntary. In addition, Mostek's right to purchase the shares arose only after Sprague voluntarily agreed to sell the shares to Gould. Most important, the 235,000 shares of Mostek stock which Sprague purchased in June, 1979, were expressly *excluded* from Paragraph 14 of the 1971 Agreement, the right of first refusal provision. Sprague recognized this in its September 5 notice to Mostek: "Sprague desires to sell the 1,227,130 shares of Mostek Corporation Common Stock, $.10 par value per share, currently owned by Sprague, including the 992,130 shares held subject to the provision of said Paragraph 14." Sprague, therefore, voluntarily sold to Mostek on the 27th of September 235,000 shares of Mostek common stock which Sprague was not legally obligated to sell.

Case law establishes a stiff test of voluntariness. So long as the seller retains any degree of control over a transaction, its actions will not be found to be involuntary. As the court held in *Makofsky v. Ultra Dynamics Corp.*, 383 F.Supp. 631, 643 (S.D. N.Y.1974), a sale is not "forced" when the seller "put its own head in the lion's mouth, and . . . retained at lease [sic] some power to get out of it." In *Western Auto Supply Co. v. Gamble-Skogmo, Inc.*, 348 F.2d 736 (8th Cir. 1965), Gamble-Skogmo purchased Western shares in January of 1960. In April, the government brought an antitrust action against Gamble-Skogmo seeking divestiture of its Western holdings. In compliance with a consent decree with the Justice Department, Gamble-Skogmo sold all of its Western shares. This sale, despite the government coercion, was held to be voluntary. *Id.* at 742.

The court in *Alloys Unlimited, Inc. v. Gilbert*, 319 F.Supp. 617 (S.D.N.Y.1970), also found that a disputed transaction was voluntary. In that case, the Vice President/director of a corporation purchased stock and pledged it with a bank as collateral for loans. The bank, under the terms of the loan, was authorized to sell the collater-

al, and it did so within six months of the stock's purchase. Although the bank and not the defendant sold the stock, the court held the transaction to be voluntary: "[T]he transaction here, while involuntary on the surface, was one sufficiently within the defendant's control to 'possibly permit an insider to use inside information unfairly,' which is the test." *Id.* at 619.

In *Oliff, supra,* neither the fact that the purchase occurred in response to a ruling by the Internal Revenue Service nor the fact that the sale was ordered by the probate court caused the transactions to be involuntary. The court noted that "[i]f the sale alleged to be forced could have been made outside of the six-month period, then the possibility of speculative abuse is present and section 16(b) is applicable." *Id.* at 1297. Here, had Sprague waited beyond the six-month period to accept Gould's offer, Mostek would have been unable to compel the September 27 transfer. Further, Sprague could have waited as long as it desired to transfer the 235,000 shares acquired in June.

Two cases appear to find involuntariness based on economic factors. *See Ferraiolo v. Newman,* 259 F.2d 342 (6th Cir. 1958); *Lynam v. Livingston,* 276 F.Supp. 104 (D.Del. 1967). However, the "economic necessity approach of these cases is tied to the lack of the possibility of speculative abuse in the conversion situation," and the court finds these cases to be inapplicable to this situation, in which there was in fact access to inside information. *Oliff, supra,* at 1294.

### B. *Possibility of Speculative Abuse*

Sprague seeks to analogize itself to the defeated tender offeror in *Kern County, supra,* arguing that Sprague had no access to inside information. The court finds the facts of *Kern County* to be dissimilar to those of the case at bar and the proposed analogy to be inaccurate.

In *Kern County,* the Section 16(b) defendant acquired more than ten percent of the target company pursuant to an ultimately unsuccessful tender offer. The issue before the Court was whether a statutory "sale" occurred either when the target company defended itself by merging into a third

company and the tender offeror then exchanged its stock for the stock of the surviving company, or when the tender offeror granted an option to the third company to purchase its shares exercisable outside the statutory six-month period. The Court held that neither exchange was a "sale."

In this case, however, Sprague is in a position much different from that of the defeated tender offeror. Sprague was a major shareholder not for a few months, but for ten years. Also, Sprague's nominees have been members of Mostek's Board of Directors since 1969, resigning only on September 5, 1979. It is undisputed that the Board was given projections in January of 1979 which were updated at the July, 1979 Board meeting. The fact that Sprague may not have had access to *all* inside information does not exempt it from Section 16(b). *Cf. Makofsky, supra,* at 640 (not a defense that defendant's designees "were neither active in the management of [the issuer] nor possessed inside information about [the issuer]"). *See generally* deposition of L. J. Sevin at 93–97. Sprague also had some degree of control over the timing of the transfer. Sprague, and not Mostek, chose September 5 to enter into an agreement with Gould, thus triggering Mostek's sixty-day period to exercise its right of first refusal.

In short, the June purchase and September sale of Mostek stock by Sprague were transactions which might "serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information" and Sprague is therefore liable under Section 16(b). *Kern County, supra,* 411 U.S. at 594, 93 S.Ct. at 1744.

### C. *Damages*

Although Mostek is entitled to judgment as a matter of law on the issue of liability, questions of fact remain as to the amount of damages to which Mostek is entitled. First, Sprague may deduct the brokerage commissions, transfer taxes, and other expenses incurred in the purchase and sale. 2 Loss, Securities Regulation, 1064 (1961). Second, there are questions of fact surrounding the issue of whether Sprague

is guilty of bad faith or other inequitable conduct, thus justifying an award of prejudgment interest. *Morales v. Gould Investors Trust*, 445 F.Supp. 1144, 1156 (S.D.N.Y. 1977).

The parties are given 15 days in which to attempt to stipulate to the amount of Mostek's damages. Absent such a stipulation, a hearing will be set by the court to make such a determination.

### III. *Leave to Amend*

Sprague seeks to amend its complaint to assert a claim under Section 10(b) against Mostek. This claim hinges on the same course of events which surround Mostek's Section 16(b) claim. Mostek opposes this amendment as an attempt to delay Mostek's collection of its Section 16(b) judgment.

The court is of the opinion that Sprague's claim was asserted in a timely manner and motion for leave to amend is granted. In the event that the damages issue in the Section 16(b) claim is disposed of, the court will consider entering partial judgment on that portion of the case.

It is so ORDERED.