David C. **HARRISON** and Herbert Ide, in the name of and on behalf of FPA Corporation, Plaintiffs,

v.

Jeffrey P. **ORLEANS**, Defendant.

No. 89 Civ. 3141 (RO).

United States District Court, S.D. New York.

Jan. 17, 1991.

Robinson Brog Leinwand Reich Genovese & Gluck, New York City (Richard W. Cohen, Laura J. Kaplan, of counsel), for plaintiffs.

Morvillo, Abramowitz & Grand, New York City (Michael C. Silberberg, of counsel), Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa. (Judah I. Labovitz, Linda Jacobs, of counsel), for defendant.

## OPINION AND ORDER

OWEN, District Judge:

Plaintiffs, shareholders of FPA Corporation, bring this derivative claim on behalf of the corporation to recover so-called "short swing profits" under section 16(b) of the Securities Exchange Act of 1934 from defendant Jeffrey Orleans, CEO and Chairman of the Board of FPA. Plaintiffs claim that defendant's conduct gave rise to 16(b) liability when, within a seventeen-day time frame, a creditor of defendant's repossessed shares of FPA stock that defendant had pledged as collateral for a loan on which he defaulted, and defendant thereafter purchased more shares of FPA.

On November 13, 1986, defendant pledged 902,513 shares of FPA common stock to Tierco Corp. to secure his obligations under a non-recourse promissory note in the amount of $12,200,000. On December 19, 1988, the outstanding balance on the Tierco note was $9,239,052.83.[1]

On January 6, 1989, Tierco notified defendant that he was in default on the note. Under the note, Tierco's sole remedy against defendant in the event of default was the 902,513 shares of FPA stock. On January 17, 1989, defendant signed an agreement pursuant to which he consented to transfer to Tierco all of the 902,513 shares of FPA common stock in full satisfaction of the Tierco note.[2] Seventeen days later, defendant purchased 110,200 shares of FPA common stock at $6 a share, paying half the purchase price in cash and the other half by promissory notes.

Section 16(b) provides: "... [A]ny profit realized by [a beneficial owner, director, or officer of a corporation] from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within a period of less than six (6) months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer."[3] Defendant claims that, as a mat-

---

1. The note set forth the following payment schedule: The balance of unpaid principal and interest was payable in seven equal, semi-annual installments of principal at $1,742,857.15 each, together with unpaid interest, the first installment of which was due on December 19, 1987 and the ensuing installments being due each June 19 and December 19 thereafter until December 19, 1990, at which time the entire unpaid balance was due and payable. On two dates during that period—December 31, 1986 and June 30, 1987—defendant had to pay Tierco the interest accrued on the unpaid principal balance. Accordingly, at the time of default, defendant presumably had satisfied his first two payment obligations (December 19, 1987 and June 19, 1988), as well as the first interest installment.

2. The note contained an acceleration clause which Tierco exercised.

3. It is not disputed that, at the relevant time, defendant was an officer, director and beneficial owner of more than 10% of the outstanding common stock of FPA, thus placing him squarely within the reach of 16(b) liability.

ter of law, the repossession of stock upon default on a non-recourse promissory note is not a "sale," and there was no "profit realized" in the transactions. Both sides now move for summary judgment.

■ Case law within this Circuit has characterized a default on a full recourse pledge of stock as collateral on a bank loan as a sale for 16(b) purposes. *See Alloys Unlimited Inc. v. Gilbert*, 319 F.Supp. 617 (S.D.N.Y.1970). In that case, the Court was confronted with a promissory note which permitted the bank-creditor to sell the insider-debtor's stock in the event that the bank felt that the loan was not adequately secured. When the bank sold the pledged stock, it applied the proceeds of the sale to reduce the debt on the note. The insider had recently purchased 2800 shares of stock in his company, and the bank's sale prompted a 16(b) claim to recover the difference between the price the insider paid for the 2800 shares and the amount by which his debt to the bank was reduced. The Court held that although the bank's sale of the pledged stock may have seemed involuntary on the part of the insider, it was sufficiently within the defendant's control so as to permit the use of inside information.[4]

Defendant argues that the outcome should be different where a loan is non-recourse, that is, where the only remedy upon default is repossession of the stock, as opposed to the debtor being able to offer alternative forms of collateral upon default. Defendant argues that this difference is significant because a debtor in default on a full recourse note who chooses to use the stock as collateral has engaged in a voluntary act, and has the opportunity to refinance or substitute other collateral thereby avoiding the sale, whereas that element of voluntariness is absent in the non-recourse context.

I disagree. In holding that the transaction fell within 16(b), the *Alloys Unlimited* Court reasoned that the transaction was one which permitted the opportunity for speculative abuse, since a trader could bring about such a sale deliberately by defaulting on the underlying loan. *See also Newmark v. RKO General, Inc.*, 425 F.2d 348, 353 (2d Cir.), *cert. denied*, 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970) (two factors bearing upon potential for speculative abuse are access to inside information and ability to influence timing of transaction). As such, the Court was not concerned with the fact that the debtor in default had a choice as to the type of collateral he chose to offer to satisfy his debt. Rather, the Court focused on the debtor's ability to bring about a default with knowledge of the fact that the pledged stock could be used to satisfy the debt.

Defendant herein was in precisely that situation. As an initial matter, defendant voluntarily entered into an agreement that pledged as collateral the stock of a corporation in which he was an insider.[5] Each time his obligation to make a payment under the promissory note arose, defendant had the choice of making such a payment or standing in default and allowing the pledge of stock to be used to satisfy the obligation. Since defendant could determine if and, to a large extent, when the collateral was used to satisfy his debt, "the opportunity for speculative abuse," which 16(b) seeks to remedy, was present the same way it would have been had the note been full recourse. Accordingly, I conclude that the transaction at issue constitutes a "sale" within the meaning of the statute.[6]

■ With respect to defendant's argument that no profit was realized as a result

---

**4.** For a list of cases also rejecting the "forced seller" defense on different facts, see *Tyco Laboratories, Inc. v. Cutler–Hammer, Inc.*, 490 F.Supp. 1, 8 n. 6 (S.D.N.Y.1980).

**5.** As Courts analyzing 16(b) have stated, "[A] sale is not 'forced' when the seller 'put its own head in the lion's mouth, and ... retained at lease (sic) some power to get out of it.'"

*Sprague Elec. Co. v. Mostek Corp.*, 488 F.Supp. 842, 845 (N.D.Tx.1980) (citing *Makofsky v. Ultra Dynamics Corp.*, 383 F.Supp. 631, 643 (S.D.N.Y. 1974)).

**6.** *See also* § 3(a)(14) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(14) ("the terms sale and sell each include any contract to sell or otherwise dispose of").

of the Tierco transaction, defendant reasons that he simply gained an economic benefit by avoiding a loss, but that he did not gain a profit per se. Plaintiffs argue that defendant had a choice whether to use his money to pay off the $9,239,052.83 balance of the Tierco note or whether to apply the FPA stock at a rate of $10.24 a share and save his money to buy more FPA stock in private transactions at $6 per share, as he did. They calculate that defendant's decision to remain in default and his purchase 17 days later of 110,200 shares of FPA common stock at a lower price generated a profit of $466,920.72 for him.

This Circuit construes the term "profit" broadly, *see Newmark v. RKO General, Inc.*, 425 F.2d 348, 355 (2d Cir.), *cert. denied*, 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970), adopting a "pragmatic" approach to analysis of 16(b) cases.[7] As such, Courts have found that the fact that "[t]he proceeds of the sales in this case are in the form of relief of obligations under promissory notes ... is, nevertheless, no basis for holding that such relief cannot be used to compute 'profits realized'...." *Morales v. Gould Investors Trust*, 445 F.Supp. 1144, 1155 (S.D.N.Y.1977), *aff'd*, 578 F.2d 1369 (2d Cir.1978). In light of the import of the *Newmark* decision, I conclude on these facts that a profit was realized in the transaction at issue for purposes of 16(b) liability.

Accordingly, the facts not being in dispute, and the elements of defendant's liability under 16(b) having been demonstrated, plaintiffs' motion for summary judgment is granted, the issue of damages remaining to be determined. So ordered.

---

**7.** I note that *Newmark* specifically rejects the analytical approach taken in a Third Circuit opinion on which defendant relies, *Heli–Coil Corp. v. Webster*, 352 F.2d 156 (3d Cir.1965).