**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENISE P. EDWARDS, individually
and on behalf of all others
similarly situated,
         *Plaintiff-Appellant,*

    v.

THE FIRST AMERICAN CORPORATION;
FIRST AMERICAN TITLE INSURANCE
COMPANY,
         *Defendants-Appellees.*

Nos. 08-56536
     08-56538

D.C. No.
CV-07-03796-SJO-
FFM

OPINION

Appeals from the United States District Court
for the Central District of California
James Otero, District Judge, Presiding

Argued and Submitted
February 4, 2010—Pasadena, California

Filed June 21, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

9089

## COUNSEL

Cyril V. Smith, Zuckerman Spaeder LLP, Baltimore, Maryland, and James W. Spertus, Law Offices of James Spertus, Los Angeles, California, for the plaintiff-appellant.

Richard M. Zuckerman, New York, New York, and Charles A. Newman, St. Louis, Missouri, for the defendants-appellees.

Gregory W. Happ, Medina, Ohio, and Mary Dryovage, Law Offices of Mary Dryovage, San Francisco, California, for amicus curiae.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Denise P. Edwards filed a complaint against Defendants The First American Corporation ("First American") and its wholly owned subsidiary, First American Title Insurance Company ("First American Title") (collectively, "Defendants"). The complaint alleged a violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607. According to Plaintiff, First American improperly paid millions of dollars to individual title companies and in exchange those title companies entered into exclusive referral agreements with First American. Plaintiff moved for class certification, and certain discovery, which the district court denied. Plaintiff's appeal from those rulings is addressed separately in a memorandum disposition filed this date. At the same time as Plaintiff filed her motions, Defendants moved to dismiss the complaint for lack of standing. The district court denied the motion, and Defendants brought this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292(b). *See also* 28 U.S.C. § 1292(e); Fed. R. Civ. P. 23(f). For the reasons that follow, we affirm.

First American is a publicly traded holding company that owns, in addition to First American Title, several other companies in the field of real estate-related information services. First American Title is a title insurance underwriter that issues title insurance policies to real estate owners and lenders in 47 states and the District of Columbia. Defendants assert that First American has an ownership interest in a small proportion of the thousands of title insurance agencies that are authorized to sell First American Title policies. Plaintiff contends that, in exchange for First American's purchase of a minority interest, many of these title agencies enter into "exclusive" agency agreements with First American Title, pursuant to which the agencies agreed to sell First American Title's title insurance policies generally. Defendants assert that few

First American Title "exclusive" agency agreements are completely exclusive. Plaintiff claims that these agreements are actually exclusive and thus illegal under the anti-kickback provisions of RESPA.

According to Plaintiff's allegations, she was affected by one such exclusive agency agreement between First American and Tower City. In 1998, First American paid Tower City $2 million in cash and securities. According to Plaintiff's allegations, in exchange, First American received a 17.5% minority interest in Tower City, and Tower City entered into a "Captive Title Insurance Agreement" that required it to refer all future title insurance business "exclusively" to First American Title. Plaintiff further alleges that Tower City had agreements with and regularly referred business to at least three other title insurers prior to 1998, but then began referring customers exclusively to First American after they entered into the Captive Title Insurance Agreement.

Plaintiff, a resident of Cleveland, Ohio, bought a home in Cleveland in September 2006. Tower City was the settlement agent and conducted the closing at its office in Highland Heights, Ohio. At or before settlement, Plaintiff received a "HUD-1 Settlement Statement" showing, on line 1108, that she would pay $455.43 and the seller would pay $273.42 for title insurance. Plaintiff claims that her title insurance was referred to First American pursuant to an exclusive agency agreement, which Plaintiff alleges was illegal under RESPA.

Plaintiff filed a complaint in district court. Defendants responded by filing a motion to dismiss for lack of subject matter jurisdiction. Specifically, Defendants claimed that Plaintiff lacked both Article III standing and statutory standing under RESPA. The district court denied Defendants' motion, holding that RESPA gave Plaintiff certain rights, the violation of which conferred standing. We review de novo. *Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004).

**[1]** There are three requirements for Article III standing—injury, causation, and redressability. *Fulfillment Servs. Inc. v. UPS*, 528 F.3d 614, 618 (9th Cir. 2008). The parties disagree about the injury component only. Defendants argue that Plaintiff has not suffered a concrete injury in fact because she has not alleged that the charge for title insurance was higher than it would have been without the exclusivity agreement. Plaintiff does not and cannot make this allegation because Ohio law mandates that all title insurers charge the same price. Ohio Rev. Code Ann. §§ 3935.04, 3935.07 (West 2010). Nonetheless, Plaintiff counters that the damages provision in RESPA gives rise to a statutory cause of action whether or not an overcharge occurred. We agree with Plaintiff.

**[2]** "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.' " *Fulfillment Servs.*, 528 F.3d at 618-19 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. Thus, we must look to the text of RESPA to determine whether it prohibited Defendants' conduct; if it did, then Plaintiff has demonstrated an injury sufficient to satisfy Article III.

It is well settled in this court that "statutory interpretation begins with the plain language of the statute." *United States v. Chaney*, 581 F.3d 1123, 1126 (9th Cir. 2009) (brackets and internal quotation marks omitted). "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (brackets and internal quotation marks omitted).

**[3]** RESPA prohibits the payment of "any fee, kickback, or thing of value" in exchange for business referrals and also forbids that a "portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service" be paid for services that are not actually rendered to the customer. 12 U.S.C. § 2607(a), (b). Whenever a violation of these prohibitions occurs, the statute provides that the defendants are liable to the "person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of *any charge paid* for such settlement service." *Id.* § 2607(d)(2) (emphasis added).

**[4]** These RESPA provisions are clear. A person who is charged for a settlement service involved in a violation is entitled to three times the amount of *any* charge paid. The use of the term "any" demonstrates that charges are neither restricted to a particular type of charge, such as an overcharge, nor limited to a specific part of the settlement service. Further, the term "overcharge" does not exist anywhere within the text of the statute.

**[5]** Because the statutory text does not limit liability to instances in which a plaintiff is overcharged, we hold that Plaintiff has established an injury sufficient to satisfy Article III. The legislative history of RESPA supports our holding. As first enacted in 1974, RESPA entitled purchasers to damages "in an amount equal to three times the value or amount of the fee or thing of value" that changed hands. Pub. L. No. 93-533, § 8(D)(2), 88 Stat. 1724 (1974) (amended 1983). This provision failed to account for "controlled business arrangements" like the alleged agreement between Tower City and First American Title, whereby an entity could provide a referral *without* the direct payment of a referral fee. A 1982 House Committee Report noted that these practices could result in harm beyond an increase in the cost of settlement services:

> [T]he advice of the person making the referral may lose its impartiality and may not be based on his pro-

fessional evaluation of the quality of service provided if the referror or his associates have a financial interest in the company being recommended. [Because the settlement industry] almost exclusively rel[ies] on referrals . . . the growth of controlled business arrangements effectively reduce[s] the kind of healthy competition generated by independent settlement service providers.

H.R. Rep. No. 97-532, at 52 (1982).

Acting on this concern, Congress exempted controlled business arrangements from liability only in limited circumstances, 12 U.S.C. § 2607(c)(4), and eliminated the "thing of value" phrasing in the damages provision, replacing it with "any charge paid" for the settlement service, *id.* § 2607(d)(2). Calculating the penalty with reference to the entire amount of the settlement service appears to address instances in which no direct referral fee has been paid. Indeed, these no-fee situations were the impetus behind Congress' enactment of the 1983 amendment. *See* H.R. Rep. No. 98-123, at 77 (1983) (expecting that RESPA violators "involved in controlled business arrangements . . . shall be . . . liable . . . in the amount of three times the amount of the charge paid for the settlement service").

**[6]** Because RESPA gives Plaintiff a statutory cause of action, we hold that Plaintiff has standing to pursue her claims against Defendants. Our holding places us in agreement with two of our sister circuits. In *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009), the Sixth Circuit held that a plaintiff has standing to sue a settlement service provider under RESPA, even if that plaintiff was not overcharged for settlement services. The court came to that conclusion after looking at the text of RESPA and then examining its legislative history and the overall intent of RESPA. *Id.* at 986-88. The Third Circuit held similarly in *Alston v. Countrywide Financial Corp.*, 585 F.3d 753, 755 (3d Cir. 2009), stating

that Congress created a private right of action without requir-ing an overcharge allegation.

AFFIRMED in part; REVERSED in part and REMANDED. The parties shall bear their own costs on appeal.