10-4941-cv
Galiano v. Fidelity Nat'l Title Ins. Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2011

(Argued: October 17, 2011     Decided: July 3, 2012)

Docket No. 10-4941-cv

————————————

GERRY GALIANO, on behalf of himself and all others similarly situated, GARY KROMER, JOSEPH AMMIRATI, MICHELLE AMMIRATI, SUSAN M. MAROTTA, AKA SUSAN MAROTTA, PETER MILEY, VINCENT TRULLI, MARTIN MARTINUCCI, AKA MICHAEL MARTINUCCI, STEPHEN J. PHELAN, AKA STEPHEN PHELAN,

*Plaintiffs-Appellants,*

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, AKA FIDELITY NATIONAL TITLES INSURANCE COMPANY, CHICAGO TITLE INSURANCE COMPANY, TICOR TITLE INSURANCE COMPANY, FIDELITY NATIONAL FINANCE, INC., FIRST AMERICAN TITLE INSURANCE COMPANY OF NEW YORK, UNITED GENERAL TITLE INSURANCE COMPANY, FIRST AMERICAN CORPORATION, STEWART TITLE INSURANCE COMPANY,

*Defendants-Appellees.*[*]

————————————

Before:

LYNCH, CHIN, AND CARNEY, *Circuit Judges.*

————————————

[*]     The Clerk of the Court is directed to amend the official caption in accordance with the above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Platt, *J.*) granting defendants-appellees' motion to dismiss plaintiffs-appellants' claims for relief under the Real Estate Settlement Procedures Act.

AFFIRMED.

------

PETER D. ST. PHILLIP, JR. (Barbara Hart, Vincent Briganti, Scott V. Papp, *on the brief*), Lowey Dannenberg Cohen & Hart, P.C., White Plains, New York, *for Plaintiffs-Appellants Gerry Galiano, Gary Kromer, Monique Kromer, Joseph Ammirati, Michelle Ammirati, Susan Marotta, Peter Miley, Vincent Trulli, and Martin Martinucci.*

Joseph S. Tusa, *on the brief*, Tusa, P.C., New York, New York, *for Plaintiff-Appellant Vincent Truilli, Jr.*

Anthonio Vozzolo, Kendall S. Zylstra, Peter Cohn, *on the brief*, Faruqi & Faruqi, LLP, New York, New York, *for Plaintiffs-Appellants Jonathan Dzedzy, Jaclyn Dzedzy, and Michael Martinucci.*

Lee Squitieri, *on the brief*, Squitieri & Fearon, LLP, New York, New York, *for Plaintiff-Appellant Peter Miley.*

Edward A. Wallace, Kenneth A. Wexler, Amber M. Nesbitt, *on the brief*, Wexler Wallace, LLP, Chicago, Illinois, *for Plaintiff-Appellant Peter Miley*.

Todd A. Seaver, Joseph J. Tabacco, Jr., *on the brief*, Berman DeValerio Pease Tabacco Burt & Pucillo, San Francisco, California, *for Plaintiff-Appellant Susan Marotta*.

David J. Cohen, *on the brief*, Kolman Ely, P.C., Penndel, Pennsylvania, *for Plaintiff-Appellant Stephen J. Phelan*.

BARRY R. OSTRAGER (Kevin J. Arquit, Patrick T. Shilling, *on the brief*), Simpson Thacher & Bartlett LLP, New York, New York, *for Defendants-Appellees Fidelity National Title Insurance Company, Chicago Title Insurance Company, Ticor Title Insurance Company, and Fidelity National Financial, Inc*.

James I. Serota, Stephen L. Saxl, *on the brief*, Greenberg Traurig, LLP, New York, New York, *for Defendants-Appellees The First American Corporation, First American Title Insurance Company of New York, and United General Title Insurance Company*.

David M. Foster, Mark A. Robertson, *on the brief*, Fulbright & Jaworski L.L.P., Washington, DC, and New

-3-

York, New York, *for Defendant-Appellee Stewart Title Insurance Company*.

---

CHIN, *Circuit Judge*:

In this putative class action, plaintiffs-appellants allege that defendants-appellees -- title insurance companies -- sold title insurance at improperly inflated rates as a result of illegal kickbacks in violation of the anti-kickback provision of the Real Estate Settlement Procedures Act ("RESPA"). *See* RESPA § 8(a), 12 U.S.C. § 2607(a) ("§ 8(a)"). The district court (Platt, *J.*) dismissed the action. Plaintiffs appeal. For the reasons set forth below, we affirm.

### STATEMENT OF THE CASE

#### 1. *Facts*

The following facts are drawn from plaintiffs' first amended consolidated class action complaint of July 9, 2008 (the "Complaint"). We construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences

-4-

in plaintiffs' favor.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Defendants are title insurance companies that sell title insurance policies to purchasers of commercial and residential real estate in New York.  Title insurance premiums for New York residential properties generally range from approximately $1,800 to $3,700.  For more expensive homes and commercial properties, New York title insurance rates can amount to tens of thousands of dollars.  Plaintiffs purchased title insurance from, and paid title insurance premiums to, defendants in connection with their purchases of New York property.

Title insurance rates in New York are established and regulated by the New York Insurance Department (the "Insurance Department").  *See* N.Y. Ins. Law §§ 2305, 2306.  The Insurance Department sets insurance rates by reviewing information -- including "past and prospective loss experience" and financial data -- submitted by individual insurers and "rate service organizations."  *See* N.Y. Ins. Law §§ 2304 (outlining factors and materials considered by

-5-

the Insurance Department), 2313(a) (defining "rate service organization"). Rate service organizations are licensed by the Insurance Department and include associations of state title insurers that file rates on behalf of their members. *See* N.Y. Ins. Law § 2313(a).

Defendants are members of the Title Insurance Rate Service Association, Inc. ("TIRSA"), an association of state title insurers licensed by the Insurance Department as a rate service organization.[1] TIRSA annually submits aggregated financial data from its members to the Insurance Department. TIRSA also prepares the New York Title Insurance Rate manual, which is submitted to the Insurance Department for approval and sets forth collectively fixed title insurance rates to be charged by its members.

TIRSA's collectively fixed rates are based, in part, on: (1) a percentage of the total value of the property being insured; (2) the cost of insuring the risk associated with issuing the title policy; (3) the costs

---

[1]    TIRSA was named a defendant in the Complaint; the claims against TIRSA were discontinued on December 17, 2010.

associated with the search and examination of prior ownership records; and (4) "agency commissions" usually paid to title agents. The cost of insuring the risk captures both prior events that cause defects to title, many of which are or can be excluded from the policy's coverage, and future losses an insurer cannot control; it is based on, *inter alia*, the age of the property, the complexity of the ownership history, and the accessibility of prior ownership records. Agency commissions cover payments made to title agents, including payments for the search and examination of prior ownership records.

While title agents do provide actual services to defendants, the commissions they are paid exceed the value of the services. In short, title insurers, including "[d]efendants[,] paid illegal kickbacks to title agents[, lawyers, brokers, and lenders,] for referrals and gave fees and other things of value to others for unearned settlement services and settlement services not provided" to plaintiffs and other purchasers of title insurance. (Comp. ¶ 91; *see* Compl. ¶¶ 32, 37). The "vast majority" of agency

commissions and "roughly 85 percent of total title insurance premiums" consist of kickbacks and other illegitimate costs. (Compl. ¶¶ 37, 38). Thus, "[t]itle insurers get business by encouraging those making the purchasing decisions . . . to direct business to that insurer. The best way to encourage [such business] is . . . [through] financial inducements." (Compl. ¶ 32).[2]

## 2. *Proceedings Below*

On July 9, 2008, plaintiffs filed the Complaint in the Southern District of New York. The Complaint alleged claims under RESPA § 8(a) and (b).[3] Plaintiffs asked the district court to, *inter alia*, "permanently enjoin[] and restrain[] [defendants] from[] unlawfully fixing or maintaining their title insurance rates at supracompetitive levels." (Compl. ¶ B). Plaintiffs sought to recoup "'three times the amount of any charge paid' for the unearned

---

[2] Defendants, of course, deny these allegations. We assume them to be true only for the purposes of this appeal.

[3] The Complaint also alleged claims under the Sherman Act (§ 1), New York General Business Law (§ 349), and common law principles of unjust enrichment. Plaintiffs voluntarily discontinued all but their RESPA claims.

-8-

settlement services." (Compl. ¶ E (citing RESPA § 8(d), 12 U.S.C. § 2607(d)).[4]

In November of 2008, this case was transferred to the United States District Court for the Eastern District of New York (Platt, *J.*) because its operative facts were substantially duplicative of those in *Dolan v. Fidelity National Insurance Co.*, No. 08-cv-0466, ECF Doc. No. 1 (E.D.N.Y. Feb. 1, 2008), a putative class action also filed in the Eastern District of New York (Platt, *J.*) against many of the same defendants in this case.[5]

On March 2, 2009, plaintiffs in this case moved to change venue and transfer the case back to the Southern District of New York. The district court denied the motion.

---

[4]     RESPA § 8(d) provides for liability "three times the amount of *any charge paid* for such settlement service." RESPA § 8(d), 12 U.S.C. § 2607(d) (emphasis added); *see also Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2038 (2012).

[5]     On June 17, 2009, the district court dismissed the *Dolan* complaint on filed-rate doctrine grounds; this Court affirmed the dismissal. *See Dolan v. Fidelity Nat'l Title Ins. Co.*, No. 08-cv-00466, 2009 WL 3934153 (E.D.N.Y. June 17, 2009), *aff'd*, 365 F. App'x 271 (2d Cir. 2010) (summary order), *cert. denied*, 131 S. Ct. 261 (2010). The plaintiffs in *Dolan* did not, however, assert a RESPA claim.

On October 5, 2010, defendants moved to dismiss plaintiffs' RESPA claims pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  On November 8, 2010, the district court granted the motion on the grounds that plaintiffs failed to state a plausible claim under RESPA § 8(a) and (b) and because the claim was precluded by the safe harbor provision of RESPA, § 8(c), and the filed rate doctrine.

This appeal followed.

## *DISCUSSION*

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6).  *Chambers*, 282 F.3d at 152.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

On appeal, plaintiffs challenge only the dismissal of their § 8(a) claim.  They argue that the district court

-10-

erred in granting defendants' motion to dismiss under RESPA § 8(a) and under the filed rate doctrine.[6]  For the reasons that follow, we conclude that plaintiffs failed to state a plausible claim under RESPA § 8(a).  We affirm the district court's dismissal of the action on this ground.

## I.   *Applicable Law*

Congress enacted RESPA, in part, to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b)(2).  RESPA § 8(a) prohibits kickbacks for referrals of real estate settlement business.  *See* RESPA § 8(a), 12 U.S.C. § 2607(a); *see also Freeman*, 132 S. Ct. at 2038, 2043; *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 121 (2d Cir. 2007).[7]  A violation of § 8(a) involves three

_____

[6]    The trial court dismissed the Complaint on three grounds:  (1) RESPA's safe harbor provision; (2) the filed rate doctrine; and (3) *Iqbal*.  We elect to decide this case on the third basis only.  In light of our disposition below, we do not consider plaintiffs' request to order the transfer of the case to the Southern District of New York.

[7]    Specifically, § 8(a) provides:  "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service . . . shall be referred to any person."  RESPA § 8(a), 12 U.S.C.

elements: (1) a payment or thing of value; (2) given and received pursuant to an agreement to refer settlement business; and (3) an actual referral. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 427 (6th Cir. 2009); *see also Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1265 (11th Cir. 2007) (citing *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692, 695-96 (11th Cir. 1998); Paul Barron, Dan Rosin & Michael A. Berenson, 1 *Federal Regulation of Real Estate and Mortgage Lending* § 2:45 (4th ed. 2011); Joyce Palomar, 2 *Title Insurance Law* § 21.2 (2011). Further, when there is a violation of § 8(a), § 8(d) provides a private right of action to "the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." RESPA § 8(d), 12 U.S.C. § 2607(d); *see*

---

§ 2607(a); *see also* 12 U.S.C. § 2602(2) (defining "thing of value"); 12 U.S.C. § 2602(3) (defining "settlement service"); 24 C.F.R. § 3500.14(f) (defining "referral").

RESPA's "safe harbor provision," however, § 8(c), provides that § 8(a) shall not be construed as prohibiting payments by a title company for goods, facilities actually furnished, or services actually performed. RESPA § 8(c), 12 U.S.C. § 2607(c).

*also Freeman*, 132 S. Ct. at 2038 (RESPA § 8(a) and (b) "are enforceable through, *inter alia*, actions for damages brought by consumers of settlement services against '[a]ny person or persons who violate the prohibitions'" of these sections. (quoting RESPA § 8(d), 12 U.S.C. § 2607(d))).[8]

RESPA, however, "is not a price-control statute." *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 57 (2d Cir. 2004) (quoting *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002)); *see Arthur v. Ticor Title Ins. Co.*, 569 F.3d 154, 156 (4th Cir. 2009). RESPA is thus not a mechanism for federal courts to regulate the reasonableness of title insurance rates. *See Kruse*, 383 F.3d at 56 (discussing RESPA § 8(b) and (d)); *Arthur*, 569 F.3d at 159 (quoting *Kruse*, 383 F.3d at 56, and collecting cases).

---

[8] Additionally, three Circuit Courts have held that RESPA creates a statutory cause of action, even if the plaintiff is not overcharged. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 518 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 3022 (2011), *and cert. dismissed*, No. 10-708, 2012 WL 2427807 (June 28, 2012); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759-62 (3d Cir. 2009).

## II. *Application*

In this case, the district court did not err in dismissing the Complaint because it did not contain sufficient factual matter to state a plausible claim for relief under § 8(a).  *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).  While the Complaint did allege a kickback scheme, it did so in a wholly conclusory and speculative manner.  *See Iqbal*, 556 U.S. at 678-79.

First, the Complaint failed to allege facts sufficient to establish the elements of a § 8(a) claim.  The Complaint failed to identify:  (1) a payment or thing of value; (2) given by defendants and received by plaintiffs' title agents, lawyers, brokers, lenders, or other third parties pursuant to an agreement to refer settlement business; and (3) an actual referral.  *See* RESPA § 8(a), 12 U.S.C. § 2607(a); *Egerer*, 556 F.3d at 427; *Culpepper*, 491 F.3d at 1265; *see also Edwards*, 610 F.3d at 515-17 (identifying actors and alleging a kickback and referral); *Carter*, 553 F.3d at 982-84 (same); *Alston*, 585 F.3d at 756-58 (same).

-14-

Second, the Complaint failed to allege any specifics as to the date, time, or amount of the alleged § 8(a) violations, or any connections between *these* plaintiffs -- or their title agents, lawyers, brokers, or lenders -- and *these* defendants. *See Egerer*, 556 F.3d at 428; *see also Edwards*, 610 F.3d at 515-17 (identifying and connecting actors); *Carter*, 553 F.3d at 982-84 (same); *Alston*, 585 F.3d at 756-58 (same). The Complaint contained no allegations that defendants charged any plaintiff a rate inflated by kickbacks.[9]

Third, plaintiffs are essentially relying on a supposed industry-wide practice of kickbacks and referrals to sustain their § 8(a) claim. In effect, the Complaint presumed that (1) there were substantial differences between title insurance rates and the actual costs incurred by title insurers -- namely, the costs associated with the risk of loss and the search and examination of prior ownership

---

[9]     An allegation of overcharge is not necessary to sustain a § 8(a) claim. *See Edwards*, 610 F.3d at 518; *Carter*, 553 F.3d at 989; *Alston*, 585 F.3d at 755. In this case, such an allegation would not have been necessary, but would have served the purpose of specifying the facts of the alleged kickback.

records -- and (2) these differences represented kickbacks for referrals rather than profit margins. *See Arthur*, 569 F.3d at 160 n.2; *Galiano v. Fidelity Nat'l Titles Ins. Co.*, No. 08-cv-04711, ECF Doc. No. 89, at 9 (E.D.N.Y. Nov. 8, 2010) (citing *Arthur*, 569 F.3d at 160 n.2). Without facts as to the alleged kickbacks, referral agreements, or referrals, however, plaintiffs are engaging in mere conjecture; this speculation is insufficient to state a plausible claim.

Finally, without specific facts as to the alleged kickback scheme, plaintiffs' § 8(a) RESPA claim effectively becomes a claim of overcharge. Because RESPA is not a price-control statute, federal courts cannot review the reasonableness or validity of title insurance rates for actual services performed. *See Kruse*, 383 F.3d at 57.

Accordingly, because the Complaint did not allege factual content that would have allowed the district court to draw a plausible inference that defendants paid kickbacks for business referrals in violation of § 8(a) in connection with the title insurance policies purchased by plaintiffs,

-16-

the district court did not err in granting defendants' motion to dismiss.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.