11-1708-cv
Donoghue v. Bulldog Investors Gen. P'ship

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————

August Term, 2011

(Argued: June 21, 2012     Decided: October 1, 2012)

Docket No. 11-1708-cv

—————————

DEBORAH DONOGHUE,

*Plaintiff-Appellee*,

v.

BULLDOG INVESTORS GENERAL PARTNERSHIP, PHILLIP GOLDSTEIN,

*Defendants-Appellants*.

—————————

Before:
POOLER, RAGGI, and LYNCH, *Circuit Judges*.

—————————

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*), awarding to plaintiff, suing on behalf of an issuer of securities, the short-swing profits realized by defendants from trading in the issuer's stock in violation of Section 16(b) of the Securities Exchange Act of 1934, see 15 U.S.C. § 78p(b).

Defendants challenge plaintiff's constitutional standing to maintain this action, arguing that the proscribed trading caused no actual injury to the issuer as required to establish a genuine case or controversy.

AFFIRMED.

<hr>

KEENAN D. KMIEC (James A. Hunter, *on the brief*), Hunter & Kmiec, Los Angeles, California; David Lopez, Esq., Southampton, New York, *for Plaintiff-Appellee*.

RICHARD W. COHEN (Scott V. Papp, Uriel Rabinovitz, *on the brief*), Lowey Dannenberg Cohen & Hart, P.C., White Plains, New York, *for Defendants-Appellants*.

<hr>

REENA RAGGI, *Circuit Judge*:

Defendants Bulldog Investors General Partnership and principal Phillip Goldstein (collectively, "Bulldog") appeal from a judgment entered on March 31, 2011, by the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*), in favor of plaintiff Deborah Donoghue suing on behalf of Invesco High Yield Investments Fund, Inc. ("Invesco"). The judgment awards plaintiff $85,491.00, representing profits realized by Bulldog from "short-swing" trading in Invesco common shares in violation of Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), see 15 U.S.C. § 78p(b) ("§ 16(b)"). Bulldog argues that the judgment must be vacated for lack of standing because plaintiff failed to demonstrate that the proscribed short-swing trading caused Invesco actual

2

injury as necessary to satisfy the case-or-controversy requirement of Article III of the Constitution.[1]  Specifically, although Bulldog concedes that § 16(b) prohibited it, as the beneficial owner of more than 10% of Invesco's common stock, from engaging in any short-swing trading, it submits that in the absence of further wrongdoing, plaintiff cannot claim any cognizable injury resulting from that trading.  We disagree and, therefore, affirm the judgment.

## I.    __Background__

The facts relevant to this disgorgement action are straightforward and largely undisputed.  During July 2008, Bulldog filed a beneficial ownership report on Schedule 13D with the Securities and Exchange Commission, reporting the hedge fund's ownership of nearly two million shares, comprising almost 15%, of the common stock of Invesco, a diversified closed-end management investment company.[2]  In the publicly available Schedule 13D, Bulldog characterized its acquisitive purpose to include "'consider[ing] whether to take actions intended to afford all shareholders an opportunity to realize net asset value for their shares,'" which "'may include submitting a shareholder proposal, seeking representation on [Invesco's] board of directors and conducting a tender offer to acquire additional shares.'"

---

[1] Because Bulldog concedes plaintiff's satisfaction of all statutory requirements to maintain this § 16(b) action, we need only address the question of constitutional standing in this opinion.

[2] The complaint names as a nominal defendant the Morgan Stanley High Yield Fund, predecessor in interest to the Invesco fund in question, whose shares continue to trade publicly on the New York Stock Exchange under the ticker symbol "MSY."

Compl. ¶ 15 (quoting Schedule 13D). To this end, Bulldog allegedly has attempted on several occasions to make demands upon Invesco's management and to persuade other shareholders to vote in opposition to management proposals. See id. ¶ 17.

Between November 2009 and March 2010, while continuing beneficially to own more than 10% of Invesco's outstanding common stock, Bulldog purchased and then sold 200,000 additional Invesco shares on the open market, realizing a profit of $85,491.00. Section 16(b) effectively prohibits such short-swing trading by a 10% beneficial owner of an issuer's equity securities, by providing that the realized short-swing profits "shall inure to and be recoverable by the issuer." 15 U.S.C. § 78p(b). Donoghue, an Invesco shareholder, requested that Invesco sue Bulldog for violating § 16(b) and when, after 60 days, the company failed to take such action, Donoghue herself commenced this suit for disgorgement in April 2010. See id. (setting forth demand requirement and waiting period before shareholder may instigate § 16(b) lawsuit).

Bulldog moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of constitutional standing, maintaining that plaintiff failed to allege any actual injury to Invesco from Bulldog's short-swing trades. The district court denied Bulldog's motion, relying on the language of § 16(b), which affords the issuer a legally protected interest in proscribed short-swing profits, and Gollust v. Mendell, 501 U.S. 115, 118 (1991), which holds that a shareholder plaintiff's ongoing financial interest in recovering short-swing profits pursuant to § 16(b) is sufficient to satisfy the injury-in-fact requirement of Article III

4

as to that shareholder.  See Donoghue v. Morgan Stanley High Yield Fund, No. 10 Civ. 3131 (DLC), 2010 WL 2143664, at *1–2. (S.D.N.Y. May 27, 2010).

Following this denial, the parties stipulated to the entry of judgment against Bulldog in the total amount of the alleged short-swing profits, with Bulldog preserving the right to appeal the district court's standing determination.

## II.    Discussion

In conducting de novo review of the denial of a Rule 12(b)(1) motion to dismiss for lack of standing, we borrow from the familiar Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008).

### A.    Section 16(b)

A vital component of the Exchange Act, § 16(b) was designed to prevent an issuer's directors, officers, and principal stockholders "from engaging in speculative transactions on the basis of information not available to others."  Huppe v. WPCS Int'l Inc., 670 F.3d 214, 218 (2d Cir. 2012); see Kern Cnty. Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 608 (1973) (observing that congressional investigations leading to enactment of Exchange Act "revealed widespread use of confidential information by corporate insiders to gain an unfair advantage in trading their corporations' securities").  Section 16(b) does not itself

5

proscribe trading on inside information.[3] Rather, Congress determined that the "only method . . . effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422 (1972); see also Huppe v. WPCS Int'l Inc., 670 F.3d at 218 (stating that "no showing of actual misuse of inside information or of unlawful intent is necessary to compel disgorgement" under § 16(b)). Thus, § 16(b) was crafted as a "blunt instrument," Magma Power Co. v. Dow Chem. Co., 136 F.3d 316, 321 (2d Cir. 1998), to "impose[] a form of strict liability," Credit Suisse Sec. (USA) LLC v. Simmonds, 132 S. Ct. 1414, 1417 (2012) (internal quotation marks omitted), by stating that any profits accruing to a director, officer, or 10% beneficial owner of an issuer "within any period of less than six months . . . shall inure to and be recoverable by the issuer," 15 U.S.C. § 78p(b); see Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 43 (2d Cir. 2012) (observing that § 16(b) establishes 10% beneficial owners as "statutory insiders" who, like directors and officers, are required "to disgorge all profits realized from any purchase and sale (or sale and purchase) of the same security made within a six month period").

---

[3] Such a prohibition has since been derived from the "antifraud provisions found in section 10(b) and SEC Rule 10b-5." 4 Thomas L. Hazen, Law of Securities Regulation: Insider Trading & Rule 10b-5 § 12.17 (6th ed. rev. 2012).

In contrast to "most of the federal securities laws, § 16(b) does not confer enforcement authority on the Securities and Exchange Commission." Gollust v. Mendell, 501 U.S. at 122. Rather, the statute authorizes two categories of private persons to sue for relief: (1) "the issuer" of the security traded in violation of § 16(b); or (2) "the owner of any security of the issuer in the name and in behalf of the issuer," but only "if the issuer shall fail or refuse to bring such suit within sixty days after the request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b). It has been suggested that the statute thus recruits the issuer (and, if necessary, its security holders) as "'policemen'" by imbuing them with "'a private-profit motive'" to enforce the law's prohibition on short-swing trading by insiders. Gollust v. Mendell, 501 U.S. at 124–25 (quoting Hearings on H.R. 7852 and H.R. 8720 before House Committee on Interstate & Foreign Commerce, 73d Cong., 2d Sess. 136 (1934) (testimony of Thomas G. Corcoran)).

B.    Constitutional Standing

It is undisputed that the complaint in this case adequately alleges a § 16(b) claim against Bulldog and that Donoghue, as an Invesco shareholder, is a person statutorily authorized to file such a claim. Bulldog nevertheless contends that the district court was without jurisdiction to hear the claim because it presents no live case or controversy affording plaintiff standing to sue. See U.S. Const. art. III, § 2; W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d at 106 (distinguishing statutory standing from constitutional standing in securities fraud context). Bulldog submits that the absence of a

7

case or controversy is evident from plaintiff's inability to satisfy the first requirement of constitutional standing: an injury in fact. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. at 560–61 (identifying "injury in fact," "causation," and "redressability" as three elements of constitutional standing); accord W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d at 106.[4]

The injury in fact required to support constitutional standing is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. at 560–61 (internal quotation marks and citations omitted); accord W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d at 106. While the injury-in-fact requirement "is a hard floor of Article III jurisdiction that cannot be removed by statute," Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009), it has long been recognized that a legally protected interest may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973); accord Warth v. Seldin, 422 U.S. 490, 500 (1975); see also Lujan v. Defenders of Wildlife, 504 U.S. at 578 (stating that nothing in denying standing to citizens at large to enforce public rights contradicts principle that statutes may confer rights on specified individuals, the breach of which suffices for standing).

---

[4] Bulldog does not challenge plaintiff's satisfaction of the causation and redressability requirements of standing. Thus, in this opinion we discuss only the requirement of an injury in fact.

8

With these principles in mind, we consider plaintiff's standing to sue under § 16(b) in this case.

C.    Section 16(b) Confers on Issuers a Legal Right to the Short-Swing Profits of Insiders Sufficient To Establish Constitutional Standing

While Bulldog acknowledges that it engaged in precisely the type of short-swing trading in Invesco stock that § 16(b) proscribes, it argues that it cannot be sued for that violation because Invesco, and therefore Donoghue, cannot demonstrate the injury in fact necessary for constitutional standing. Where, as here, a shareholder plaintiff pursues a § 16(b) claim on behalf of an issuer, the claim "is derivative in the sense that the corporation is the instrument . . . for the effectuation of the statutory policy." Magida v. Cont'l Can Co., 231 F.2d 843, 846–47 (2d Cir. 1956); see 15 U.S.C. § 78p(b) (authorizing security holder to bring suit only "in the name and in behalf of the issuer"); Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (referring to § 16(b) suit by shareholder as "derivative suit"). In such cases, there appear to be two steps to injury analysis. First, because a derivative action generally is "a mere procedural device to enforce" substantive rights belonging to the issuer, Phillips v. Tobin, 548 F.2d 408, 411 (2d Cir. 1976); see Gollust v. Mendell, 501 U.S. at 127 (recognizing that security holder "will have no direct financial interest in the outcome of [§ 16(b)] litigation, since any recovery will inure only to the issuer's benefit"), there must be injury in fact to that real party in interest, see generally Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004) (setting forth

9

widely accepted definition of derivative claim as one "asserting injury to the corporate entity" and requesting "relief that would go [to] the corporation").  Second, the Supreme Court has recognized that when an issuer's interests are pursued derivatively by a shareholder, a "serious constitutional question" would arise if the shareholder were allowed to maintain the § 16(b) claim even after losing all personal financial interest in the outcome of the litigation.  Gollust v. Mendell, 501 U.S. at 126.[5]

This second step of analysis need not detain us.  Neither in the district court nor on appeal has Bulldog challenged Donoghue's allegation of a "continuing financial stake" in this litigation.  Id. at 125.  Instead, Bulldog argues that plaintiff cannot demonstrate any injury to the issuer from the alleged § 16(b) violation because Invesco "was a non-party to the trades at issue, and no issue of 'corporate opportunity,' fiduciary duty, breach of contract or misappropriation is on the table."  Bulldog Br. 16.  Indeed, Bulldog insists that it is a "consummate 'outsider,'" lacking any "fiduciary, contractual or confidential relationship with Invesco."  Id. at 5.  We reject Bulldog's argument as without merit.  To explain, we

---

[5] Although Gollust indicated that the absence of such a shareholder's financial interest in the outcome of a § 16(b) derivative action would raise Article III concerns, see 501 U.S. at 125–26, we do not understand it to hold that such an interest is alone sufficient to demonstrate Article III standing in the absence of injury to the real party in interest, the issuer.  Satisfaction of that standing requirement appears to have been undisputed and assumed in Gollust.  We note that Gollust pre-dated the Supreme Court's 1998 ruling in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), holding that a federal court must satisfy itself as to "constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits."  Alliance For Envt'l Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. at 101)).

must consider not only the purpose animating § 16(b), but the legal rights that Congress conferred on issuers in order to further that purpose. It is Bulldog's invasion of those rights that supports plaintiff's standing.

The purpose of § 16(b) is stated in its opening clause: to prevent "the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). As we have already noted, to serve that purpose, Congress did not simply proscribe trading on inside information; rather, it enacted a "flat rule" that takes the profits out of an entire "class of transactions" occurring within a prescribed time frame "in which the possibility of abuse" of inside information "was believed to be intolerably great." Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. at 422. In discussing the reason for § 16(b)'s rule of strict liability, Judge Learned Hand observed that "[i]f only those persons were liable, who could be proved to have a bargaining advantage, the execution of the statute would be so encumbered as to defeat its whole purpose." Gratz v. Claughton, 187 F.2d 46, 50 (2d Cir. 1951) (reiterating well-settled principle "that a statute may provide any means which can reasonably be thought necessary to deal with the [identified] evil, even though they may cover instances where it is not present").

More pertinent to the questions of injury and standing that concern us today is Gratz's recognition that § 16(b)'s flat rule effectively makes 10% "beneficial owners fiduciaries as directors and officers were anyway," at least to the extent of making all short-swing

11

transactions by such persons in the issuer's stock "breaches of trust."  Id. at 49 (internal

quotation marks omitted); see also Adler v. Klawans, 267 F.2d 840, 844 (2d Cir. 1959)

(commenting that Congress's "intent in the enactment of § 16(b) was to discourage what was

reasonably thought to be a widespread abuse of a fiduciary relationship" by "three classes

of persons").  Thus, Bulldog cannot maintain that it owed no fiduciary duty to Invesco.  That

fiduciary duty was created by § 16(b), and it conferred upon Invesco an enforceable legal

right to expect Bulldog to refrain from engaging in any short-swing trading in its stock.  The

deprivation of this right establishes Article III standing.  See, e.g., Warth v. Seldin, 422 U.S.

at 500.

Nor can Bulldog deny any injury to the issuer from its short-swing trading by pointing

to the fact that § 16(b) operates without regard to whether the statutory fiduciaries were

actually privy to inside information or whether they traded with the intent to profit from such

information.  This confuses the wrongdoing that prompted the enactment of § 16(b)—trading

on inside information—with the legal right that Congress created to address that

wrongdoing—a 10% beneficial owner's fiduciary duty to the issuer not to engage in any

short-swing trading.  As Judge Hand explained, even at common law, a fiduciary's duty to

a beneficiary often required more than the avoidance of actual unfair dealing:  "'A trustee

with power to sell trust property is under a duty not to sell to himself either at private sale or

at auction, whether the property has a market price or not, and whether the trustee makes a

profit thereby.'"  Gratz v. Claughton, 187 F.2d at 49 (quoting Restatement of Trusts § 170(1),

12

cmt. b). Drawing an analogy between trust law and the fiduciary duty created by § 16(b), Judge Hand observed that "[n]obody is obliged to become a director, an officer, or a 'beneficial owner'; just as nobody is obliged to become the trustee of a private trust; but, as soon as he does so, he accepts <u>whatever</u> are the limitations, obligations and conditions attached to the position, and any default in fulfilling them is as much a 'violation' of law as though it were attended by the sanction of imprisonment." <u>Id.</u> (emphasis added).[6]

Thus, pursuant to § 16(b), when a stock purchaser chooses to acquire a 10% beneficial ownership stake in an issuer, he becomes a corporate insider and thereby accepts "the limitation[]" that attaches to his fiduciary status: not to engage in any short-swing trading in the issuer's stock. <u>Id.</u>[7] At that point, injury depends not on whether the § 16(b) fiduciary traded on inside information but on whether he traded at all. A corporate issuer, after all, has an "interest in maintaining a reputation of integrity, an image of probity," for its § 16(b) insiders "and in insuring the continued public acceptance and marketability of its stock."

---

[6] Contemporary commentary recognizes the benefits of this "trust law approach" to fiduciary duty. <u>See generally</u> Robert H. Sitkoff, <u>Trust Law, Corporate Law, and Capital Market Efficiency</u>, 28 J. Corp. L. 565, 573 (2003) ("By rendering all evidence of intrinsic fairness irrelevant and employing a disgorgement remedy, the no-further-inquiry rule creates a strong incentive for trustees to abstain from self-dealing . . . .").

[7] <u>Gratz</u> suggests that beneficial owners, directors, and officers of an issuer may owe a duty to the purchasers of their shares. <u>See</u> 187 F.2d at 49. Because this case presents us with no occasion to discuss that point, we here focus only on the fiduciary duty that § 16(b) imposes in favor of the issuer.

13

Diamond v. Oreamuno, 24 N.Y.2d 494, 499, 301 N.Y.S.2d 78, 82 (1969) (discussing New York law intended to remedy "the same sort of 'abuse of a fiduciary relationship' as is condemned by" § 16(b)). This interest is injured not only by actual insider trading but by any trading in violation of an insider's fiduciary duty, including the trading altogether prohibited by § 16(b). The fact that such injury to the issuer is not easily calculated does not make it less real for purposes of identifying an actual case or controversy. In any event, § 16(b) eliminates any calculation concerns by providing the issuer, upon breach of the fiduciary duty created by that statute, with the right to any profits realized from the unfaithful insider's short-swing trading.

To be sure, this statutory arrangement provides issuers (and their shareholders) with an incentive to police short-swing trading by beneficial owners, directors, and officers, to the benefit of the market as a whole. Nevertheless, because the issuer's right to profits under § 16(b) derives from breach of a fiduciary duty created by the statute in favor of the issuer, the issuer is no mere bounty hunter but, rather, a person with a cognizable claim to compensation for the invasion of a legal right. This distinguishes the instant case from Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000), a qui tam action under the False Claims Act, in which the Supreme Court ruled that a claimant needs more than an interest in "the bounty he will receive if the suit is successful" to establish constitutional standing. Id. at 772–73 (comparing such interest to "wager" on

14

suit's outcome). The claimant's alleged "interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." Id. (holding relator-plaintiff to satisfy injury-in-fact requirement in False Claims Act case due to statute's implied partial assignment of government's damages claim). As we recognized in Gratz, § 16(b) effectively gives issuers a legally protected fiduciary right to expect statutory insiders not to engage in short-swing trading of their stock, and compensates them for the violation of that right by allowing them to claim any profits realized from such trading.

Further, because the fiduciary obligation created by § 16(b) is not general, but rather confers a specific right on issuers to expect their insiders not to engage in short-swing trading, this case is distinguishable from Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112 (2d Cir. 2009). There, we held that an ERISA plaintiff bringing a disgorgement claim could not satisfy the injury requirement of standing by alleging defendant's general "breach of fiduciary duty under ERISA without a showing of individualized harm." Id. at 120 (rejecting proffered Article III injury of "right to a plan that complies with ERISA"). Instead, such a plaintiff "must allege some injury or deprivation of a specific right that arose from a violation of that duty." Id. at 119.

In distinguishing these cases, we note that where, as here, a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination. See generally Warth v. Seldin, 422 U.S.

15

at 500 ("Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."). Thus, just as § 16(b) and the fiduciary right it effectively confers on issuers are distinct from the right to maintain a qui tam action under the False Claims Act or the right to sue for breach of fiduciary duty under ERISA, so are they distinct from the right to recovery afforded by the Real Estate Settlement Procedures Act of 1974 ("RESPA"), see 12 U.S.C. § 2601 et seq., relied on in Edwards v. First American Corp., 610 F.3d 514, 515 (9th Cir. 2010), to support standing.

The parties discuss Edwards at length because that standing determination was pending review in the Supreme Court at the time we heard oral argument. See No. 10-708, 131 S. Ct. 3022 (June 20, 2011) (granting writ of certiorari in part). In Edwards, the Ninth Circuit upheld a plaintiff's standing to sue under RESPA to recover three times the amount of any charge paid for real estate settlement services provided in violation of that law even though the plaintiff did not—and could not—allege that the charges were higher than they would have been but for the violation. See 610 F.3d at 516 (observing that state law dictated that all providers charge same specified amount for settlement services at issue). Nevertheless, because it construed RESPA's text to confer on plaintiff a legal right to recovery without regard to an overcharge, the Ninth Circuit held that the plaintiff had satisfied the injury requirement of Article III. See id. at 517. In light of the Supreme Court's dismissal of its writ of certiorari, see No. 10-708, 132 S. Ct. 2536 (June 28, 2012)

16

(dismissing writ as improvidently granted), Edwards remains good law in the Ninth Circuit, and has been cited approvingly in our own, see Galiano v. Fid. Nat'l Title Ins. Co., 684 F.3d 309, 315 n.9 (2d Cir. 2012) ("An allegation of overcharge is not necessary to sustain a [RESPA] claim." (citing Edwards v. First Am. Corp., 610 F.3d at 518)).

To the extent this case differs from Edwards, the differences provide greater support for recognizing plaintiff's standing here. Unlike RESPA, § 16(b) is not a law that permits defendants to engage in particular conduct, specifically, short-swing trading, subject to certain conditions. Much less is this a case in which Bulldog can argue that, although it failed to comply with § 16(b), the prices at which it bought and sold Invesco shares and the profit realized therefrom were all dictated by some law that applied uniformly to all buyers and sellers, negating the possibility of actual injury to anyone. As we recognized in Gratz, § 16(b) is a statute that addresses the problem of insider trading by conferring on securities issuers a legal right, one that makes 10% beneficial owners "constructive trustee[s] of the corporation," 187 F.2d at 48, with a fiduciary duty not to engage in short-swing trading of the issuer's stock at the risk of having to remit to the issuer any profits realized from such trading. It is the invasion of this legal right, without regard to whether the trading was based on inside information, that causes an issuer injury in fact and that compels our recognition of plaintiff's standing to pursue a § 16(b) claim here.

17

While this particular legal right might not have existed but for the enactment of § 16(b), Congress's legislative authority to broaden the injuries that can support constitutional standing is beyond dispute. "Statutory broadening of the categories of injuries that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." Lujan v. Defenders of Wildlife, 504 U.S. at 578 (internal quotation marks and brackets omitted). While the principle is not so elastic as to permit the general "public interest in proper administration of the laws [to] be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue," id. at 576–77, that is hardly this case.

Although Congress enacted § 16(b) to serve a general interest in safeguarding the integrity of the stock market against insider trading, it did not eliminate the injury requirement of standing. Rather, it created legal rights that clarified the injury that would support standing, specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock. Such an injury in fact to Invesco having been satisfactorily alleged in this case, we reject Bulldog's standing challenge as without merit.

18

**III.     Conclusion**

To summarize, we conclude that short-swing trading in an issuer's stock by a 10% beneficial owner in violation of Section 16(b) of the Securities Exchange Act causes injury to the issuer sufficient for constitutional standing.

The judgment of the district court is AFFIRMED.

19